## No. 13,349.

COLORADO LIFE COMPANY *v.* WINEGARNER.

(35 P. [2d] 860)

Decided July 2, 1934.

Mr. R. H. WALKER, for plaintiff in error.

Mr. A. L. BETKE, Mr. BRYAN L. WHITEHEAD, for defendant in error.

*In Department.*

MR. JUSTICE BOUCK delivered the opinion of the court.

MRS. Winegarner, defendant in error, sued to recover from the Colorado Life Company, plaintiff in error, on a life and accident insurance policy which was issued by the company on June 26, 1930, to her husband, Milton Winegarner, and which named her as his beneficiary. Verdict and judgment for $2,000 were in her favor. The company seeks reversal.

The insured husband, having paid one annual premium, failed to pay the second when it became due June 26, 1931.

The policy provides: "After the first payment hereon, premium unpaid 31 days (which are days of grace and not an extension of the due date) after its due date is in default." No payment was made or tendered during the

31 days. No extension of time for payment was asked or given during that period.

The policy contained the following provision: "This policy will become void * * * at default in premium payment. * * * If this policy shall lapse (that is if, as provided, it shall become void * * *) it may, if each and every one of the conditions below be complied with, be reinstated at any time while the Insured be living and after due approval by the Company. * * * Said conditions are as follows, to-wit: (a) that due evidence, satisfactory to the company, of the then insurability of the Insured be duly furnished; provided always, that at the Company's option, such evidence of insurability may from time to time be waived and such waiver or waivers shall not establish a precedent; and, (b) that due payment be made of premium for the period from premium due date prior to default to premium due date at or after reinstatement with compound interest on the amount of each such premium at six per cent per annum from the date it would have been payable had this policy remained in full force."

The terms of the policy were in compliance with the statutes of Colorado. C. L. 1921, §§2516, 2523, et cetera. In fact, they were in great part more favorable to the insured than the statutes themselves. For instance, the statutes do not provide for any benefit to the insured after such lapse when this occurs before the payment of three full years' premiums. C. L. 1921, §2523. The policy, on the other hand, provides for such affirmative benefits as cash, paid-up and extended-insurance values after only two full years' premiums have been paid. Of course, none of these benefits had arisen, since the second annual premium had not been paid.

The statutes do not require an insurance company to reinstate a policy which has lapsed. Hence, since the rights of Mrs. Winegarner are based upon an alleged reinstatement of the insured under the terms of the policy, we must look to the policy itself. Obviously we

have here no question of rights conferred upon the insured by a statute. The question therefore resolves itself into one of interpreting the contract made for themselves by the parties, and it is incumbent upon the courts to give effect to that contract.

■ On November 6, 1931, Winegarner, the insured, died. His widow alleged that four days previously he sustained an accidental injury and that blood poisoning ensued therefrom, causing his death. For this reason she demanded $4,000, double the face of the policy, the double amount being payable in case of death by accident. In rendering a verdict for only $2,000 the jury must necessarily have found that death was not due to accident.

The company defends by saying that the reinstatement was not effected, and that the application for reinstatement contained wilfully false statements as to the health of the insured, contrary to an express condition precedent to reinstatement.

■ The company's procedure for reinstatement of a lapsed policy includes the presentation of an application which requires an answer to the following: "Question 1. Have you had, since said policy was issued and delivered, any disease, ailment, injury or complaint of any kind?" This question here was answered "no." "Question 2," to be answered if question 1 is answered "yes," calls for full information as to the nature and the duration of any such trouble. Apparently emphasizing the fact that the insured's answer was not "yes," the reiterating "no" is inserted instead.

"No" was the answer to the following: "Question 3. Are you now in every respect free from disease, injury and/or complaint? * * * If your answer is 'no,' give full particulars as to the nature of such * * *." In the present case the space reserved for such particulars remained blank. Alongside the answer "no" was "(yes)" in the handwriting of one of the company officers. Counsel for Mrs. Winegarner argue earnestly from this fact that the company thereby deliberately ignored the in-

sured's express denial of being "now in every respect free from disease," etc., and that the company has waived its right to object. However, to take the "no" as the answer really intended, and to make of the "(yes)" anything but an innocent correction of what naturally looked like a palpable blunder, is to indulge in a fanciful and unplausible speculation; for it is not conceivable that the reinstatement process would have gone a single step farther if the true answer had been understood to be intentionally in the negative, especially since the place for "full particulars" remained wholly vacant. The company's duty to its other policyholders forbids such a view, and we find no merit in this argument.

Coming back, then, to the claim that there was a reinstatement, we shall consider whether such claim, under the facts here, can be sustained.

The evidence is undisputed that the company approved the application for reinstatement on the day after Winegarner's death. His contract with the company was wholly embodied in the policy. It provided, as is shown by the quotation hereinabove given, that there might be a reinstatement if certain conditions were complied with and after due approval by the company, while the insured was living. Here undoubtedly such approval was not given in Winegarner's lifetime. Moreover, the evidence clearly proves that before his death Winegarner suffered an attack of acute yellow atrophy of the liver, or malignant jaundice, and that he was under treatment for it by a physician from October 19 to November 1, 1931, inclusive, but was not cured. Furthermore, this condition was directly coupled with the blood poisoning that was considered the cause of death. Mrs. Winegarner minimized the illness, but the proof is overwhelming that it existed and was serious in every sense before the purported date of application for reinstatement. Death occurred only two days after the reinstatement-fee remittance purported to be mailed to Denver from a distant point in Baca county, as will appear below. One cannot

believe that the company would have so far forgotten the interests of its other policyholders as to bring back to life the Winegarner policy (more than two months after the period of grace for premium payment had ended) if it had had, and in spite of having knowledge such as is attempted to be imputed to the company in regard to the serious illness. For this the judgment must be reversed.

But there are other reasons why we cannot allow the judgment herein to stand.

■ Considerable evidence was introduced as to statements made by one Golden, a salesman or soliciting agent of the company, concerning his own alleged authority to effect a reinstatement. Aside from the patent fact that the documents before us squarely contradict such evidence, the latter plainly falls into condemnation under the elementary rule that an agent's authority cannot be established by proof of his own statements in relation thereto. Admission of this evidence was prejudicial error.

A physician who treated Winegarner from October 19 to November 1, 1931, and a physician who treated him from November 3 until Winegarner's death three days later, flatly contradicted Mrs. Winegarner and her witnesses on material points, including various questions arising in connection with the illness, such as the date when her husband was first attacked by blood poisoning, which she fixed as November 2, while the other evidence placed it back in October. She also claimed that she personally procured and mailed, before 8 o'clock in the morning of November 2, the money order for $2.50 which was to accompany the application for reinstatement, subject to a refund if the reinstatement were not granted; but there is in the record before us a photostatic copy of the money order application with the issuing date November 4 stamped thereon, substantiated by the sworn testimony of the postmaster at the issuing office in Campo, Colorado, and by his clerk.

■ Complaint is made of testimony concerning ad-

missions alleged to have been made by the agent Golden after Winegarner's death to the effect that the deceased had been reinstated. This was clearly prejudicial error for more than one reason under accepted rules of evidence.

All in all, however, even without regard to the particular errors mentioned above, the evidence now here indicates with overwhelming force that the Winegarners inexcusably delayed their attempt to reinstate the husband's policy until a mortal disease had overtaken him, and that they thereupon in a crude and blundering way tried to overcome the obstacle presented by the certainty of failure in case the full facts should become known. Under the circumstances here appearing, it seems clear that the application for reinstatement was not approved until after Winegarner's death, and that the application concealed those facts as to his health which the company reasonably required and expected by its contract to be truthfully disclosed. Whether, if another trial be had, it will result in a sufficient amount of legally unobjectionable evidence to entitle Mrs. Winegarner to judgment is a question that depends upon the state of the evidence then submitted.

Other errors complained of than those which are dealt with above raise serious questions, possibly serious enough in themselves to render it probable that some of these were reversible. However, owing to the views already expressed, and the likelihood that such errors will not be repeated in the event of another trial, we omit discussion of them here.

 Error is assigned on the denial of a motion for nonsuit. The motion was proper and timely, inasmuch as the application for reinstatement shown to have been presented in the name of Winegarner by his wife was in writing, and her counsel deliberately refrained from offering it in evidence. With that lacking, she utterly failed to make even a prima facie case. The nonsuit ought to have been granted, and if the company had

stood on that motion it would have been our duty to order a dismissal of the case. However, by failing so to stand on its application for a nonsuit, and proceeding further in the trial, the company waived the error.

In conclusion we note that the trial judge, in ruling on the motion for a new trial, though denying it, said: "Maybe I ought to have granted a new trial anyway." This, in the light of what has been said, strengthens our conclusion that the judgment must be reversed and a new trial granted. Both parties request that we now decide the case on its merits though it is pending on application for supersedeas. This we now do.

Judgment reversed.

Mr. Chief Justice Adams and Mr. Justice Butler concur.