## HOGUE v SUPREME LIBERTY LIFE INSURANCE COMPANY

Ohio Appeals, 7th Dist, Mahoning Co

No 2404.  Decided Oct 22, 1937.

Ross E. Diser, for Appellee.

W. M. Howard, Youngstown, and J. M. Dickerson, Youngstown, for Appellant.

## OPINION

By NICHOLS, J.

Helen Hogue brought her action in the Court of Common Pleas of Mahoning County against Supreme Liberty Insurance Company to recover upon a life insurance policy, issued by that company upon the life of Charles Hogue, minor son of Helen Hogue, she being beneficiary under the policy.

The issues having been made up upon the amended petition of plaintiff and the answer thereto of defendant, the cause was tried to a jury and resulted in a verdict for plaintiff. After the overruling of motion for a new trial, judgment was rendered on the verdict. The Insurance Company appeals to this court on questions of law for the reversal of that judgment.

In her amended petition, after alleging the corporate capacity of the defendant, the issuance of the policy of insurance by i' to her upon the life of her son, Charles Hogue, under which she is beneficiary, in consideration of the premiums named therein, plaintiff alleges that the policy lapsed for non-payment of premiums on or about July 20th, 1935; that reinstate-

ment application was executed for the insured about August 7, 1935; that the application for reinstatement and premiums were forwarded to the home office of the insurance company at Chicago, Ill., on August 12, 1935; that the company unreasonably delayed approval of the application, but finally did so on August 19, 1935; that the insured died by drowning August 16, 1935; that within ten days after the death of the insured the defendant, by its duly authorized agent in the City of Youngstown, was orally notified of the death of the insured and waived written notice of his death; that thereafter, on August 29, 1935, written request was made for forms with which to make proof of death, which forms were thereafter furnished December 3, 1935, on which date affirmative proof of such death was duly certified and filed with the defendant at Chicago, Ill.

The amended petition sets forth certain clauses contained in the policy (to such as are material we will hereinafter refer), together with a schedule showing the age of the insured to be seven years at next birthday, the weekly premium five cents, the kind of policy to be "Whole Life", the amount of insurance $170.00, the beneficiary to be Helen Hogue, whose relationship is that of mother to the insured.

The amended petition further alleges "that at and during all times herein mentioned said policy of insurance was in full force and effect," and that the defendant has failed to comply with its contract of insurance; that there is due and payable thereon the sum of $170.00, for which plaintiff prays judgment.

For its answer to the amended petition of plaintiff the insurance company admits that it is a corporation engaged in the life insurance business in the state of Ohio, and is duly licensed to do so; that it issued a "Whole Life Industrial Policy" upon the life of Charles Hogue, a minor, in the sum of $170.00; that the plaintiff is the designated beneficiary in the policy; that the policy contains the several clauses or paragraphs set up in plaintiff's amended petition; and denies each and every other allegation contained in the amended petition but further alleges that if it should transpire that the insured, Charles Hogue, died on the 16th day of August, 1935, then, and. in that event, the defendant is not liable to the plaintiff for any amount on the policy, for the reason that such policy lapsed for non-payment of premiums on or about the 20th day of July, 1935, and was never reinstated during the life of

Charles Hogue; that a reinstatement application was executed for the insured on or about the 7th day of August, 1935, a payment of ten cents in cash was made, and the policy was subjected to a lien for forty five cents for the purpose of paying accrued arrears; that the policy, application for reinstatement and ten cents premium were forwarded to the home office of the company in Chicago for approval according to the following clause contained in the policy, providing for reinstatement:

"REINSTATEMENT. At any time within fifty-two weeks from default in payment of premiums, if the cash surrender value. has not been paid, this Policy may be reinstated upon production of evidence of insurability satisfactory to the Company and approved at its Home Office, and upon payment in full of all arrears of premiums and payment of reinstatement of any indebtedness hereon or secured hereby. Such reinstatement shall not take effect unless at the date hereof the insured is alive and in sound health."

The defendant further alleges in its answer to the amended petition that the application for reinstatement was approved by the proper officials of the company at its home office on or about August 19, 1935, and subsequently forwarded to the local office in Youngstown, Ohio; that at the time the approval of reinstatement was endorsed on the policy at the home office, the company had no knowledge of the death of the insured; that the policy was subsequently delivered by its local manager to the father of the insured for the purpose of allowing his attorney to inspect the same and to advise him as to his rights, and not for the purpose of completing reinstatement.

Defendant further alleges in its answer that "there is due the plaintiff ten cents in premiums which were deposited on the reinstatement application, since the insured was not alive and in sound health at the time the attempted reinstatement was approved by the Home Office; and that the said amount has been tendered to the plaintiff but she refused to accept the same. Defendant herewith deposits ten cents in court for said plaintiff", and prays that it go hence without costs.

In the brief filed herein by counsel for appellant it is stated that the amended petition of the plaintiff and the answer thereto of the defendant raised the issue, first, as to the death of Charles Hogue, and,

second, unreasonable delay of the defendant in acting upon the application for reinstatement of the policy, if any.

It will be noted that the defendant, after admitting certain specific allegations contained in the amended petition, denies each and every other averment thereof; and this standing alone constituted a denial that the insured died at the time alleged in the amended petition, although, by the language of the answer last above quoted, it is further observed that the company sets forth that "the insured was not alive and in sound health at the time the attempted reinstatement was approved at the Home Office."

The record discloses that the body of Charles Hogue, the insured was never found after the child was seen to sink in the Mahoning River while swimming therein on August 16, 1935.

The jury, at the time of rendering its general verdict, made answer to certain specific questions propounded to it, whereby they found that Charles Hogue is dead; that he died August 16, 1935; and that the cause of his death was drowning. As to these findings of fact, we are unable to say that the same are manifestly against the weight of the evidence as shown by the record.

The jury also made answer to other interrogatories submitted to them at the trial, to which we will hereinafter refer.

Upon the trial plaintiff introduced in evidence the policy, premium card, special lien reinstatement application, and a copy of a letter from Attorney Harold Hull to the insurance company and its reply thereto. An objection was interposed to the admission of these letters, and the first assignment of error urged by appellant relates to the introduction thereof. If, under the pleadings upon which the case was tried, the only issues raised were, first, as to the death of Charles Hogue, and, second, unreasonable delay of the insurance company in acting upon the application for reinstatement of the policy and since the amended petition and answer thereto each alleged that the application for reinstatement was approved by the company at its home office on the 19th day of August, 1935, it is the claim of appellant that the introduction of the above mentioned letters was erroneous, without amending pleadings, since the letters purported to show that the application for reinstatement had actually been approved by the defendant before the 19th day of August, 1935.

We hold that these letters were competent and that no error prejudicial to the defendant arose from their admission.

It seems apparent that under the issue of unreasonable delay in approving the application for reinstatement, it was perfectly proper for the plaintiff to introduce evidence tending to show that the application for reinstatement could have been approved earlier than the 19th day of August, 1935, and if the application were actually approved earlier than that date, such fact would have very great weight with the jury in determining whether there was unreasonable delay on the part of the company in approving the application under date of August 19, 1935.

We find no error in the overruling by the trial court of defendant's motions for a directed verdict at the conclusion of plaintiff's evidence and at the conclusion of all the evidence. Upon the issues raised upon the pleadings there was evidence of probative value requiring the same to be submitted to the jury.

Upon the trial the defendant requested the court, in writing, to charge the jury before argument, and here complains that the trial court erred in failing to give its following requests:

"2. If you find by a preponderance of all the evidence that Charles Hogue was drowned on the 16th day of August, 1935, and that the defendant, The Supreme Liberty Insurance Company, approved reinstatement of his policy on the 19th day of August, 1935, your verdict should be for the defendant.

"3. If you find by a preponderance of all the evidence that the defendant, The Supreme Liberty Life Insurance Company, endorsed its approval of reinstatement on the policy of insurance covering the life of Charles Hogue, before the 16th day of August, 1935, but with the intention that it should not take effect until the 19th day of August, 1935, provided Charles Hogue were alive and in sound health on the 19th day of August, 1935, your verdict should be for the defendant.

"4. Before the plaintiff can recover the face value of this policy, she must prove by a preponderance of all the evidence that the policy of Charles Hogue was reinstated before his death.

"5. Before the plaintiff can recover the face value of this policy, less the indebtedness of forty-five cents, she must prove by a preponderance of all the evidence that the policy was reinstated and delivered to the insured while he was alive and in sound health."

Claim is also made by appellant that the trial court erred in giving to the jury before argument plaintiff's certain written requests to charge, as follows:

"3. The court says to you as a matter of law, the terms of the policy admitted in evidence do not require that reinstatement shall not be effective until some endorsement to that effect is placed upon the policy. That is, the reinstatement is complete without such endorsement, if the proofs of insurability and the premium payments are in fact satisfactory to the company and in its possession.

"4. The court says to you as a matter of law the fact that the paper called an Application for Reinstatement received in evidence in this case contained a provision requiring the fact of reinstatement to be endorsed upon the policy before such reinstatement should be effective, is immaterial and must be disregarded.

"5. The court has said to you that as a matter of law the reinstatement of the policy in evidence did not depend upon the endorsement of such fact upon the policy. Nevertheless, you may consider the fact that such endorsement was in fact made, if you find by a preponderance of the evidence that it was made, as evidence of the fact that the proof of insurability and the premium payment were satisfactory and had been passed upon by the company at its home office.

"6. If you find upon all the evidence that it is more probable than not that the Supreme Liberty Life Insurance Campany at its Home Office in Chicago considered the so-called 'Application for Reinstatement' of the policy upon the life of Charles Hogue, Jr. and placed the endorsement reading 'Reinstated August 19th, 1935,' upon the policy prior to August 16, 1935, then your verdict should be for the plaintiff, provided that you find upon all the evidence that it is more probable than not that Charles Hogue, Jr., died upon August 16th, 1935

"8. If you find from all the evidence that it is more probable than not that the paper called the 'Application for Reinstatement' containing statements that Charles Hogue, Jr., was 'apparently in good health' and money to the amount of 10c reached the defendant company at its Home Office in Chicago upon August 12th, 1935, and that the defendant failed to consider such application prior to August 16th,

1935, and if you find that it is more probable than not that such failure to consider the said application and the payment of money, prior to August 16th, 1935, was under all the circumstances, unreasonable, then your verdict should be for the plaintiff, provided that you find upon all the evidence that it is more probable than not that Charles Hogue, Jr., died upon August 16th, 1935.

"12. Proof by preponderance of the evidence upon any particular issue is present, if you find the particular fact upon such issue to be more probable than not.

"15. If you find from all the evidence that it is more probable than not that the Supreme Liberty Life Insurance Company at its Home Office in Chicago, considered the so-called 'Application for Reinstatement' of the policy upon the life of Charles Hogue, Jr., and indicated its approval thereof in some manner at some time prior to August 16th, 1935, then your verdict should be for the plaintiff, provided that you find upon all the evidence that it is more probable than not that Charles Hogue, Jr., died upon August 16th, 1935."

Whether the Common Pleas Court erred in giving or refusing to give the quoted requests to charge the jury depends, first, upon the issues made by the pleadings, and, second, upon the proper construction to be given that portion of the insurance contract relating to reinstatement upon default in payment of premiums.

It is claimed by appellant that since the amended petition and the answer thereto each alleges that the company approved the application for reinstatement on August 19, 1935, the date of such approval is established as of that date; and that the charges numbered 6 and 15 given by the court at the request of plaintiff, submitted to the jury an issue not raised by the pleadings and contrary to the positive allegations of both the amended petition and the answer thereto.

As hereinbefore stated, plaintiff alleged in her amended petition that "the company unreasonably delayed approval of the application, but finally did so upon August 19, 1935." It is seen that this allegation is made in connection with the claim of plaintiff that the company had unreasonably delayed the approval of the application for reinstatement. But we observe that further along in the amended petition plaintiff alleges "that at and during all times herein mentioned said policy of insurance was in full force and effect." In the ab-

sence of motion to the amended petition, we think the last quoted allegation thereof was sufficient to raise the issue as to whether the application for reinstatement had been approved at or before the death of the insured. If any inconsistency existed between the quoted allegations of the amended petition, objection thereto was waived because no motion was made to strike or make definite and certain, and in the state of the pleadings at time of trial we think the trial court was not in error in admitting testimony tending to establish that the insurance company had in fact approved the application for reinstatement prior to August 16, 1935, and that no error intervened in the giving of plaintiff's requests numbered 6 and 15.

As stated in the brief of appellant, "the defendant proceeded in this law suit on the theory that an application for reinstatement was and is merely an offer from the insured to the insurer and that there can be no liability until the insurer has accepted the offer while the insured is alive and in sound health." When we analyze the particular clause of the policy governing reinstatement, we find that failure of the insured to pay the premiums as they become due did not work a forfeiture of the insurance contract during fifty-two weeks from default in such payment. Defendant, in its answer to the amended petition of plaintiff, alleges that the "policy lapsed for nonpayment of premiums on or about the 20th day of July, 1935," and we think that allegation correctly described the situation since by the plain terms of this clause of the policy the insured had the right, within fifty-two weeks after default, to have the policy reinstated upon his payment of arrears of premiums and payment or reinstatement of any indebtedness upon the policy, subject only to production of evidence of insurability satisfactory to the company and approved at its home office, and provided the insured is alive and in sound health at the date thereof. Some ambiguity may exist as to the exact meaning of the last sentence of the reinstatement clause, which reads: "Such reinstatement shall not take effect unless at the date thereof the insured is alive and in sound health." This language must be construed most favorably to the insured, since the company prepared the insurance contract, and so construed, the words "Such reinstatement" can refer to no other than that which has been thereinbefore provided, that is, the reinstatement which results from the date upon which satisfactory evi-

dence of insurability has been produced to the company and approved at its home office, and the arrears of premiums paid. It seems not a matter of doubt that the insured must be alive and in sound health in order that evidence of insurability could be produced, so the last sentence of the clause really adds nothing to the requirements for reinstatement. Nothing in the clause or other portion of the insurance contract requires the company's approval of reinstatement to be endorsed on the policy, nor is there any right reserved to the company to refuse reinstatement upon compliance by the insured with the stipulated requirements therefor. It follows that an absolute right to reinstatement existed under the contract in favor of the insured upon compliance with such stipulated requirements, and such absolute right to reinstatement being shown to exist in favor of the insured under the contract, it necessarily follows that the company was required under its contract to approve such reinstatement within a reasonable time after compliance by the insured with such stipulated requirements. This so-called doctrine requiring approval by the company within a reasonable time necessarily follows from the existence of the right of the insured under the contract to reinstatement upon compliance with the stipulated requirements, for it can be readily seen that if the company defer compliance for such period that more than fifty-two weeks expire after default in payment of premiums, it could thereby avail itself of the provision of the policy which limits the right to reinstatement to fifty-two weeks from such default. Clearly, under the contract, the company could not delay approval and thereby defeat the right of the insured to reinstatement. If the company could not delay approval for fifty-two weeks after compliance by the insured with such stipulated requirements, just how long could it delay such approval? In the absence of any specified time in the insurance contract, we are driven to the conclusion that the company must approve reinstatement of the policy within a reasonable time after compliance by the insured with the stipulated requirements for reinstatement. Examining all of the requested charges in the light of our construction of this insurance contract, it follows that no error intervened upon the part of the trial court in refusing to give the charges requested by the defendant or in giving the charges requested by the plaintiff.

Our attention has been directed to the following language contained in the special lien revival application:

"The above described policy having lapsed for non-payment of premiums, application is hereby made for its reinstatement, and to induce the company to reinstate said policy it is hereby represented that the insured named therein has not since its date been sick or afflicted with any disease or met with any accident or consulted or been prescribed for by any physician except as stated in this application. It is expressly understood and agreed that there shall be no liability under said policy on the part of the company (1) unless and until this application for reinstatement has been approved by the company at its Home Office by endorsement on said policy; (2) if any of the statements herein are untrue.

"It is further agreed that in consideration of waiver of the present collection of the premiums in arrears on said policy said arrears shall be a lien against the policy and the amount of said arrears, with interest at six per cent per annum, shall be deducted from the amount which would otherwise be payable under said policy."

Thus it appears that actual payment in full of all arrears of premiums was waived by the insurance company and it consented to the payment of a portion thereof and the establishment of a lien against the policy for the remainder. This the company had a right to do, and it must be held that thereby the insured complied with that portion of the reinstatement clause which required payment in full of all arrears of premiums. The company did not, however, have the right to incorporate in the application for reinstatement any provision conditioning reinstatement as effective only upon endorsement on the policy since no such condition was contained in the insurance contract and there was no new consideration for such additional condition. It is observed that this application for reinstatement speaks of the policy as having lapsed and further indicates the understanding of the company that all rights of the insured under the contract had not been forfeited.

That the right of reinstatement after default in payment of premiums existed in favor of the insured at any time within fifty-two weeks, upon observance of the specific requirements contained in the reinstatement clause of the policy, is further

demonstrated by the fact that the policy contains a clause entitled "Policy When Void", which provides the specific events rendering the policy void. Non payment of premiums is not prescribed as an event which voids the policy. We, therefore, find no error in the charge of the court to the jury wherein it was instructed that the provision of the application for reinstatement requiring such reinstatement to be endorsed on the policy was not material.

In addition to the interrogatories to which we have hereinbefore referred, the jury returned with the general verdict their answers to other interrogatories, as follows:

"Q. No. 5. When did the defendant endorse on the back of the policy the statements concerning reinstatement?

A. Some time after the arrival of the policy in the home office.

Q. No. 6. Did the defendant approve the application for reinstatement of the policy before the death of Charles Hogue?

A. Yes.

Q. No. 7. Did the defendant deliver the policy with its approval of reinstatement endorsed thereon while Charles Hough was alive?

A. No.

Q. No. 9. If the defendant did not reinstate the policy until August 19, 1935, having received the application for reinstatement on the 12th day of August, 1935, was there an unreasonable delay on the part of the defendant in acting upon the application for reinstatement?

A. Yes."

The general verdict returned by the jury is in accord with their answers to the interrogatories, all of which were submitted on behalf of the defendant, and after a careful consideration of the record we are unable to say that the general verdict or answers to the interrogatories are manifestly against the weight of the evidence.

The record discloses that at the time the application for reinstatement was executed, the agent of the company made the following certificate as a part of the application:

### CERTIFICATE OF AGENT AND OF MANAGER OR SUPERINTENDENT.

The undersigned certify to having personally seen the life heretofore insured under the above policy, on the dates set opposite their respective signatures below; that said life is apparently in good health; that the applicant's signature is genuine. The acceptance of this application is recommended.

J. Washington, Agent 8-7-1935.

W. Anderson, Mgr. 8-7-1935."

It is conceded that the application for reinstatement was in fact approved by the company at its home office, without other proof of insurability than that contained in the application for reinstatement and the certificate of the agent and manager of the company. This application and certificate reached the company at its home office August 12, 1935, and it would be apparent to the jury that the company could have approved the application at its home office when it arrived there, since the company apparently accepted the representations of the insured and its own agent and manager without further proof of insurability. Indeed, the insurability of the applicant for reinstatement at all times previous to his death by drowning on August 16, 1935, is not questioned in this case, and since there was no valid objection to the proofs of insurability submitted, the company could not refuse to revive the policy. We think the record contains evidence sufficient to warrant the jury in finding either that the application was actually approved before the death of the insured or that the company had a reasonable time in which to approve the same at its home office after receipt of the application at its home office.

In the case of Prudential Ins. Co. of America v Union Trust Co., 56 Ind. App., 418, 105 N.E., 505, it was held by the Appellate Court of Indiana as follows:

"1. Under an insurance policy, providing that if the policy lapsed for nonpayment of premiums, it would be revived within one year upon payment of all arrears, provided evidence of the insurability of insured satisfactory to the company was furnished, where insured furnished the company's local agent all the papers and proof required of him to have the policy revived, and there was no valid objection to the proofs of insurability, the company could not refuse to revive the policy, and thereby defeat its liability, merely because insured died as the result of an accident before the application and proofs reached the home office of the company, since insured had inchoate insurance which he might at any time ripen or revive by a performance of the conditions of the contract; and, when

such conditions were complied with, the company could not refuse to revive the insurance, and unless the application was disapproved for a proper reason, the revival related back to the time of the application.

"2. Where an insurance policy provided that in case of lapse it would be revived within one year upon payment of all arrears, provided evidence of insurability was furnished, an agreement in the application to revive that the policy would not be in force until the company should have consented to revive it was without consideration, and did not prevent the revival taking effect from the date of the application, where insured then complied with all the conditions necessary to have it revived."

In the case of Knights Templars' & Masons' Life Indemnity Co. v Jacobus. 80 Fed. Rep., 202, the Circuit Court of Appeals of the United States for the seventh Circuit held:

"By a resolution of the board of directors of a beneficial association, properly passed, provision was made for the reinstatement of policy holders in default for more than thirty days by furnishing a certificate of good health and a medical examination which should prove satisfactory to the company. J., being in default for that length of time, forwarded to the company such a certificate and examination with the required assessment, but the medical director refused to pass on the examination, because of its not being accompanied by an application,' J. being informed that his new examination came too late to reinstate his policy, as same had been cancelled, and that a new policy would have to be issued, for which a blank application was inclosed. J. acquiesced, and made the new application, by which he agreed that no liability was assumed by the company until the policy should be actually issued. J died before the application was acted on. Held that, as the certificate and examination for reinstatement were unobjectionable, the lapsed policy was revived thereby as effectually as if a certificate of reinstatement had been issued, and J., by making the new application, was not precluded from asserting that there had been a reinstatement."

Interesting cases along the same line are:

Rose Industrial Ins. Co. v Edison, 138 Ga., 592, 75 S.E., 657.

Apostle v Acacia Mut. L. Ins. Co., 208 N. C., 95 179 SE., 444.

Many cases are cited in the able brief of counsel for appellant to the effect that until the conditions precedent have been complied with no reinstatement takes place. These cases are distinguished from the case under consideration here where the conditions precedent were all complied with prior to the death of the insured. Other cases are cited in support of the proposition that no reinstatement takes place until the application for reinstatement has been approved by the insurer. Here we have a question of fact as to when the application for reinstatement was approved by the insurer, and the jury found that such approval had occurred prior to the death of the insured. It may be said that the courts of the various jurisdictions are not in entire accord upon the legal propositions involved in this case, and we find no case in Ohio directly in point. However, we believe the conclusions at which we have arrived are in accord with sound legal principles upon which we are willing to stand.

The defendant asked that there be submitted to the jury an additional interrogatory, as follows:

"Q. No. 8. If the defendant endorsed on the back of the policy 'Revived' or 'Reinstated', as of August 19, 1935, before the 19th day of August, 1935, did it intend to revive the policy before that date?"

The court refused to submit this interrogatory to the jury, to which refusal an exception was noted on behalf of defendant. We find no error in the refusal of the trial court to submit this interrogatory.

Under the insurance contract, the intent or lack of intent upon the part of the insurance company to revive the policy by endorsement on the back thereof was not material to the right of plaintiff to have the policy reinstated upon compliance with the specific requirements of the reinstatement clause, and any answer which the jury may have given to this interrogatory, had the same been submitted to it, would not have controlled the verdict.

Some complaint is made on behalf of appellant to the fact that when the jury had arrived at its general verdict and returned with the same into court with its answers to the interrogatories submitted, the court, in the absence of counsel for defendant and before formally accepting the

verdict, began an inspection of the interrogatories to see whether they had been answered, and upon reading interrogatory number 6 found the answer thereto to be as follows:

"A. It should have been."

Finding that the question was not answered as propounded, the court stated to the jury that it could not accept the verdict and required the jury to retire and resume their deliberations. The jury thereupon retired, and later brought in the verdict and answers to interrogatories as hereinbefore quoted. The court dictated into the record the fact that no instructions of law were given to the jury, or any instructions of any kind except the direction to retire and answer interrogatory number six. It does not appear that the defendant was in any wise prejudiced because its counsel was not present when the jury first reported and were returned to the jury room for the purpose of making answer to interrogatory number six. We find no error in the proceedings of the trial court in this respect.

We have examined and considered all of the errors assigned on behalf of appellant and find no error in the record prejudicial to its rights. It follows that the judgment of the Common Pleas Court must be and the same is affirmed.

Judgment Affirmed.

ROBERTS, PJ and CARTER, J. concur.