**BOWIE v. BANKERS LIFE CO.**

No. 1812.

Circuit Court of Appeals, Tenth Circuit.

June 21, 1939.

Rehearing Denied Sept. 6, 1939.

Clarence L. Ireland, of Denver, Colo. (Ireland & Blackman and Harold D. Torgan, all of Denver, Colo., and Adams, Heckman & Raso, of Grand Junction, Colo., on the brief), for appellant.

Samuel M. January, of Denver, Colo. (G. Dexter Blount and Ronald V. Yegge, both of Denver, Colo., and J. P. Lorentzen and Dwight Brooke, both of Des Moines, Iowa, on the brief), for appellee.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

BRATTON, Circuit Judge.

Bernice L. Bowie filed this suit against Bankers Life Company. The complaint contained two causes of action. The matters in controversy in the first were adjusted and it was dismissed. It was alleged in the second cause of action that as of June 28, 1928, the defendant issued its policy insuring the life of Alexander Bowie in the sum of $10,000; that the policy was payable to plaintiff as beneficiary; that it contained a provision for double indemnity in case of accidental death; that on November 25, 1937, an automobile being driven by the insured along a highway plunged from a bridge into a canal crossing the highway and the insured was drowned; that proof of death was submitted; and that the company had failed and refused to make payment of the amount due under the double indemnity provision.

The answer interposed three separate affirmative defenses to the second cause of action but only the first is presented on this appeal. It alleged that the policy provided for the payment of an annual premium in advance but that the company would accept semi-annual or quarterly premiums in advance; that no payment should continue the policy in force beyond the date when the next payment was due; that default in payment of a premium would immediately render the policy null and void and all rights thereto forfeited to the company except as to certain rights relating to cash surrender value, paid-up value, and extended insurance, as set forth in the policy; that the agreement for double indemnity benefits provided that such benefits should be automatically cancelled upon default in the payment of any premium required under such agreement; that the insured during his lifetime paid the premiums in quarterly installments up to and including the installment of June 28, 1937; that he failed to pay the premium due September 28th; that the policy lapsed October 30th; and that due to such default and lapse, the agreement for double indemnity had become and was cancelled at the time of the death of the insured.

By second amended reply to such defense, it was alleged that the insured paid the quarterly premiums to September 28, 1937; that on or about November 1st, thereafter, he mailed his check to the agency of the company at Denver as payment of the quarterly premium then past due; that the agency received the check on November 2nd; that on the same day the agency wrote insured acknowledging receipt of the check but stating that it could not be accepted as it had been mailed after the expiration of the grace period, that if he would complete and return the application for reinstatement which was enclosed it would receive consideration, and that the check would be held for a few days subject to his order; that on November 3rd, insured executed the application for reinstatement and mailed it to the home office of the company at Des Moines; that on November 12th, the company wrote insured that it would be necessary for him to secure a statement from his attending physician relative to an illness said in his application for reinstatement to have been suffered during the previous August and September; that the insured received such letter in due course,

and on November 18th, the physician wrote the company at its home office advising that the soreness in the left shoulder of the insured was inconsequential; that on November 24th, the company wrote insured requesting that he furnish a report of a medical examination to be conducted by another physician, named in the letter; and that such letter was received at the post office of the insured on the day following his death. Copies of the application for reinstatement and letters were attached to the reply and made a part of it. Insured stated in response to questions propounded in the application for reinstatement that a physician had treated him during August and September, preceding, for soreness in the left shoulder caused by infected wisdom teeth; that the attending physician gave him a complete physical examination including twenty-four hour urine and blood test; that the physician pronounced his heart, urine, and lungs satisfactory, and further pronounced his general condition satisfactory except for poisoning from the infected teeth which were removed; that the soreness then cleared up; and that he had fully recovered. After receiving the application making these disclosures, the company wrote the insured that it would be necessary to have a statement from his attending physician giving details in regard to his illness, and to have the doctor advise the nature and severity of symptoms, the results of any special examinations, whether in his opinion insured had completely recovered, and, if so, the approximate date of such recovery. The physician stated in his certificate, sent to the company, that he gave insured a careful and complete physical examination and found him to be in very good physical condition with the exception of one or two teeth, which he thought were in questionable condition; that he referred insured to a dentist and the teeth were removed; that insured had since been relieved of his complaint; that his symptoms were at no time severe; and that he did not have any temperature, redness, swelling, or other objective symptoms.

The company demurred to the reply on the ground that the matters pleaded therein were not sufficient to constitute a reply to the affirmative defense. The demurrer was sustained. Plaintiff refused to plead further and elected to stand upon the pleadings already filed. Judgment was entered for the company, and plaintiff appealed.

■ The sole question for determination is whether the facts pleaded in the reply and admitted in the demurrer thereto, standing alone and without more, were sufficient in law to constitute a reinstatement of the policy. The policy bears an endorsement which provides that the contract shall be deemed to be made and payable in the State of Colorado. The law of that state is therefore determinative. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A. L.R. 1487; Ruhlin v. New York Life Ins. Co., 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290; Rosenthal v. New York Life Ins. Co., 304 U.S. 263, 58 S.Ct. 874, 82 L.Ed. 1330.

■ The policy contains a provision that at any time within five years after default in payment of any premium, it may be reinstated upon presentation at the home office of the company of evidence of the insurability of the insured satisfactory to and approved by the company, and the payment of all premium arrears with interest thereon. This provision was one of substantial right to the insured. That right was to have the policy reinstated on the seasonable presentation of evidence of his insurability satisfactory to and approved by the company, together with payment of all premiums then in arrears plus interest thereon. Evidence of insurability satisfactory to the company, as therein used, means evidence which would satisfy a reasonable person experienced in the life insurance business that the insured was in an insurable condition. The company was obligated to treat and regard evidence of that kind as satisfactory. The contract further provides that the evidence shall be approved by the company, but such a provision does not authorize an insurance company to withhold approval of evidence which is satisfactory in substance and form. The company was not clothed with power to act arbitrarily or capriciously in determining whether the evidence of insurability was satisfactory or should be approved. It could not be governed by fancy or whim in deciding such matters. It was required to consider the evidence in the light of common sense and reason; and when viewed in that manner, it was the further duty of the company to regard it as satisfactory and approve it if no valid objection existed in respect to its form or substance. Where a policy contains a provision of this kind, where proof of insurability which is not open to valid objection as to form or substance is submitted within the authorized time, where payment of all premiums presently in arrears plus interest thereon is tendered, where the insured thus fully complies with the conditions of his contract, and where his death is wholly accidental and in no way involved in his proof of insurability, the policy is reinstated and the restoration relates back to the time of the submission of the application and the tender of the premiums. Officer v. New York Life Ins. Co., 73 Colo. 495, 216 P. 253.

The company places strong reliance upon the case of Colorado Life Co. v. Winegarner, 95 Colo. 261, 35 P.2d 860. But that case is distinguishable. There the policy provided in substance that it could be reinstated if these conditions were complied with while the insured was living and after due approval of the company, (a) due notice, satisfactory to the company, of the then insurability of the insured be duly furnished, and (b) due payment be made of all premiums in default with compound interest. The widow alleged that the insured sustained an accidental injury and that blood poisoning ensued which caused his death. The evidence showed that the application for reinstatement was approved on the day following the death of the insured; that the insured suffered an attack of acute yellow atrophy of the liver or malignant jaundice; that he was treated for such disease for almost two weeks shortly prior to his death, and was not cured; that such condition was directly coupled with the blood poisoning that was considered the cause of death; that it existed and was serious in every sense before the purported date of the application for reinstatement; and that death occurred only two days after the reinstatement-fee was mailed. The court said that one could not believe the company would have restored the policy had it known the facts in respect to the serious illness of the insured, and that for such reason the judgment for the beneficiary must be reversed. No comparable situation is presented here. The insured in this case did not withhold any material fact from the insurance company. Instead, he disclosed the soreness of his shoulder, explained the details, and stated that he had fully recovered. The company elected to request a statement from his attending physician as the additional information desired. It was furnished. The

physician stated in clear and unqualified language that he gave insured a careful and complete examination; that he found him in very good physical condition with the exception of one or two teeth which he thought were questionable; that they were extracted; that since then he had been relieved of his complaint; that his symptoms were at no time severe; and that he had neither temperature, redness, swelling, nor other objective symptoms. Since the question was determined below on demurrer to the reply, it must be assumed that the company did not have other or different information which was taken into consideration in determining whether the proof of insurability thus submitted was satisfactory. The facts differentiate the case from Colorado Life Co. v. Winegarner, supra, and bring it within the principles enunciated in Officer v. New York Life Ins. Co., supra.

The judgment is reversed and the cause remanded with directions to overrule the demurrer to the reply.