**Norma L. BRUEGGER, Plaintiff,**

v.

**NATIONAL OLD LINE INSURANCE COMPANY, Defendant.**

**No. C74-25.**

United States District Court,
D. Wyoming.

Jan. 31, 1975.

George A. Clarke, Lusk, Wyo., for plaintiff.

G. G. Greenlee, of Murane, Bostwick, McDaniel, Scott, Greenlee & Owens, Casper, Wyo., for defendant.

## MEMORANDUM OPINION

KERR, District Judge.

This diversity action involves a single issue, viz.: Was the $150,000 insurance policy issued by National Old Line Insurance Company [National] in effect at the time of the death of the insured?

This matter was originally filed in the District Court for Niobrara County, Wyoming, and later removed to this Court, pursuant to 28 U.S.C. §§ 1332 and 1441. Counsel have filed a Stipulation of Facts and have mutually agreed upon the exhibits to be considered by the Court. Likewise, the parties have appropriately submitted the matter for determination on motions for summary judgment. There being no genuine issue as to any material facts, the matter is ripe for summary judgment.

Norma L. Bruegger brings this action as the owner and primary beneficiary of a life insurance policy issued by National, seeking to recover the value of the policy, $150,000, together with attorney's fees, interest and costs. On March 12, 1971, National issued life insurance policy Number 0632120, wherein John Bruegger, husband of the plaintiff, was the insured. This policy was executed and delivered to the insured within the State of Wyoming. Premiums on the policy were payable on a quarterly basis and were timely paid until March 1973. A premium was due on March 12, 1973, and notice thereof was properly given. The amount of the premium was $374.-35. This premium was not paid on or before March 12, 1973. The policy provided:

"A grace period of thirty-one (31) days without interest will be allowed for the payment of every premium after the first, during which period this policy shall continue in force. . . . Except as otherwise provided herein, this policy shall be cancelled and forfeited at the expiration of the grace period for the payment of a premium, if such premium is not paid before the end of such period."

Such a grace period was in keeping with Wyoming law then in effect. See Wyo.Stat. § 26.1–341 (1967). Under this thirty-one day grace period, the policy continued in full force and effect until April 11, 1973, when the policy lapsed for nonpayment of the premium. The policy also provided for reinstatement upon lapse:

"This policy may be reinstated at any time within five years after date of default in payment of premium upon presentation of evidence of insurability satisfactory to the Company, the payment of all premium arrears, and the payment of interest at 5% per annum, compounded annually, on each unpaid premium from its due date."

Wyoming law permits reinstatement within three years of default. See Wyo.Stat. 26.1–348 (1957).

On or about April 27, 1973, National mailed a notice captioned "Special Offer" wherein National offered to revive the lapsed policy. On May 2, 1973, Na-

tional sent to the deceased a partially completed application for reinstatement of the lapsed insurance policy. This application contained the following assurance and stipulation:

"(b) It is further represented and stated that all persons named in question 2 above [referring to insured] are now in good health, free from all disease, deformities or ailments, and of temperate habits; that since the date of the issuance of the above described policy . . ., each of the persons named in question 2 above [insured] has had no injuries, ailments or illnesses, and has not been sick from any cause.

. . . . . .

It is also further agreed that said policy shall not be considered reinstated until this application shall be approved by the Company at its Home Office during the lifetime and good health of all persons named [insured] in question 2 above . . ., and that any payment of premiums made by the undersigned in advance or any receipt therefor, shall not be binding upon the Company until this application is so approved."

On or about June 11, 1973, the insured drew a check in the amount of $374.35, as payment for the premium due on March 12, 1973. The application for reinstatement was completed and mailed, with the check, on June 12, 1973. Any interest due under the reinstatement clause of the policy has been waived by National. On June 12, 1973, the insured was alive and in good health and on that same day he departed for Chicago, Illinois. The next day, June 13, 1973, at approximately seven o'clock in the evening, the insured was shot by an assailant in Chicago, Illinois. The application for reinstatement and the check were received by National at its home office in Little Rock, Arkansas, on Friday, June 15, 1973. On Monday, June 18, 1973, the application for reinstatement was approved by National,

with the policy being paid to June 12, 1973. On June 24, 1973, John Bruegger, the insured, died in a Chicago hospital as a result of the gunshot wound inflicted on June 13, 1973. A notice of reinstatement dated June 26, 1973, was sent to the plaintiff, the policy being paid until June 12, 1973. This notice reinstated the original policy. National contends that the approval of June 18 was tentative and that approval of the reinstatement was not final until the notice of June 26, 1973. From the affidavits filed by National, it appears that National was not aware of and had no knowledge of either the insured's injury or subsequent death prior to granting approval of the reinstatement application. The insured's check was deposited on June 27, 1973, by National. On or about June 26, 1973, a notice was mailed to plaintiff of the premium due on June 12, 1973, and on July 2, 1973, plaintiff drew a check for this premium. On July 2, 1973, one of National's agents sent a telegram notifying National of John Bruegger's death and requesting that claim forms be forwarded to plaintiff. On July 5, 1973, plaintiff also wrote to National requesting such claim forms. Finally, on September 28, 1973, National notified plaintiff that it was its position that the policy had not been effectively reinstated, and this action was subsequently commenced.

■ The policy was initially delivered to the insured within the State of Wyoming, premiums were paid by checks drawn on Wyoming banks, and the insured was a resident of Wyoming. Therefore, the laws of Wyoming determine the rights and liabilities of the parties. See Wyoming Farm Bureau Mutual Insurance Co. v. State Farm Mutal Automobile Insurance Co., 467 F.2d 990 (10th Cir. 1972); Bush v. Prudential Insurance Co. of America, 150 F.2d 631 (3rd Cir. 1945). This Court has not found after extensive research any Wyoming cases dispositive of the issues presented by this matter. A thorough

study has shown that the various courts which have been confronted by similar facts and issues are in conflict and that it is not possible to reconcile many of the decisions. Such a conflict necessarily decrees that the particular facts and circumstances in each specific case cannot be overlooked.

In order to narrow the scope of this decision it is worthwhile to note what this case does not involve. This matter does not present the issue of "unreasonable delay" on the part of the insurance company, see Gressler v. New York Life Insurance Co., 108 Utah 173, 156 P.2d 212 (1945); nor is there any issue present of fraud in the application of reinstatement, see Colorado Life Co. v. Winegarner, 95 Colo. 261, 35 P.2d 860 (1934); and likewise, there is no issue of waiver by or estoppel of the insurance company, see Life & Casualty Insurance Co. v. Walters, 207 Ark. 910, 183 S.W.2d 515 (1944). Several issues are raised and are properly before the Court, the threshold issues being those of determining what right of reinstatement the insured had and the nature of that right.

 It is not in dispute that certain axioms of general application form the framework upon which insurance law rests. Thus, insurance is viewed as a special application of the law of contracts deriving its judicial importance from the critical purposes it serves. 43 Am.Jur.2d Insurance § 1. Although it is not disputed that insurance policies are to be interpreted much as other contracts and that there exists a contractual relationship between insurer and insured; however, it is a cardinal principle of insurance law that a policy or contract of insurance is to be construed liberally in favor of the insured or his beneficiary and strictly as against the insurer. True, there are exceptions to this rule but this constitutes the general rule. 44 C.J.S. Insurance § 297, p. 1165.

After expiration of the grace period on April 11, 1973, the policy lapsed. Two months later insured submitted his application for reinstatement. One day after submission of the payment and application he was shot, an injury which ultimately directly caused his death. It is unfortunate that his prescience was not of such a degree as to have afforded him the opportunity to avoid such a consequence. Nevertheless, contrary to what counsel for National states, Jackson v. United Benefit Life Insurance Co., 54 Wyo. 62, 86 P.2d 1089 (1939), does not stand for the proposition that reinstatement is "purely one of a separate agreement." That issue was not resolved in that case. It is true that there were separate agreements or policies but the case arose because of confusion as to which of two policies payment tendered by the insured was to be applied. As stated by the court, 86 P.2d at 1092:

"The controlling question herein is as to whether or not the insured paid any premium on the policy sued on herein which would keep the policy alive."

The language quoted by counsel from the *Jackson* case as supporting this view of reinstatement in fact pertains to whether there was a waiver by the company of the forfeiture and whether the company thereby was estopped, due to its correspondence with the insured, from raising such forfeiture. As stated, this Court does not consider the issues of waiver or estoppel to be present under the facts and circumstances of this case.

 The relationship between the insured and the insurer being contractual, the source of the obligations and rights of the parties is the insurance policy. The policy granted the insured a right of reinstatement at any time within five years of default and "presentation of evidence of insurability satisfactory to the Company." As a valuable contractual right it cannot be facilely or unilaterally altered or defeated. This right has been ensured by Wyoming statutory law. It

is thus clear that the insured had a right of reinstatement, provided him by contract and by law, and which he timely sought to invoke by tendering payment of all premium arrears. The payment of interest as provided by the policy is waived and is not an issue. The payment was complete and sufficient.

Reinstatement was a contractual right granted by the policy to the insured. The policy, though, does not contain the requirement in its reinstatement clause that reinstatement will not be effective "until approved by the company at its home office during the lifetime and good health of the insured," as does the application for reinstatement. A fair and reasonable reading of the reinstatement clause cannot lend credence to a construction that such a stipulation is even impliedly present. As is here pertinent, the insured was required under the policy only to present "evidence of insurability satisfactory to the Company." The stipulations of the reinstatement application sought to vary the terms of the policy, and such variances were unilaterally imposed and were not supported by any consideration. As stated by another court, "[W]e hold that the provision in the application for reinstatement that it should not become effective until approved at the home office . . . during the lifetime of the insured cannot vary the terms of the original policy." Kennedy v. Occidental Life Insurance Co., 18 Cal. 2d 627, 117 P.2d 3, 5 (1941); accord, Illinois Bankers Life Association v. Palmer, 176 Okl. 514, 56 P.2d 370 (Okl. Sup.Ct.1936); Hogue v. Supreme Liberty Life Insurance Co., 59 Ohio App. 409, 18 N.E.2d 503 (1937). The right to reinstate was created and reserved by the original contract of insurance.

■■■ When the insured mailed his application for reinstatement, together with payment of all premium arrears, there is no doubt that he was in good health. Even if this Court were to view reinstatement as involving a new contract, which it does not, the hoary and still valid rule could be applied that an offer by mail invites acceptance by mail, acceptance being effective upon mailing. See Adams v. Lindsell, 1 B. & Ald. 681 (1819). His application for reinstatement provided "evidence of insurability satisfactory to the company" pursuant to the policy. This view is supported by the "tentative" approval by the company on June 18, 1973, which was the first day on which National had an opportunity to act on the application. Of course, if at the time the application was mailed the insurer would have been justified in rejecting the application, as a reasonable insurer, it could have done so even though the death of the insured intervened, e. g., Colorado Life Co. v. Winegarner, 95 Colo. 261, 35 P.2d 860, above. The agreement did not contemplate the exercise of the insurer's caprice or fancy. That which the law will say a contracting party ought in reason to be satisfied with, that the law will say he is satisfied with. See Parker v. California State Life Insurance Co., 85 Utah 595, 40 P.2d 175 (1935), as modified in Gressler v. New York Life Insurance Co., 108 Utah 182, 163 P.2d 324 (1945); Funk v. Franklin Life Insurance Co., 392 F.2d 913 (7th Cir. 1968); Ryman v. American National Insurance Company, 488 P.2d 32, 96 Cal.Rptr. 728 (Cal.Sup.Ct.1971); Bowie v. Bankers Life Co., 105 F.2d 806 (10th Cir. 1939). The deceased was objectively insurable on June 12, 1973.

■■ "The date as to which an applicant's insurability is to be measured . . . is the date on which the individual applied for reinstatement and tendered payment for all premiums due." Ryman v. American National Insurance Co., 488 P.2d 32, at 41, 96 Cal.Rptr. 728, 737 above; accord, Bowie v. Bankers Life Co., 105 F.2d 806, at 808, above; Republic Life Ins. Co. v. Craige, 186 Okl. 692, 100 P.2d 281 (1940); Gressler v. New York Life Insurance Co., 108 Utah 182, 163 P.2d 324 (1945); Funk v. Franklin Life Insurance Co., 7 Cir., 392 F.2d 913, above; see generally, Annot., 164 A.L.R. 1057 (1946). This standard provides an objective determination

and eliminates the unfair advantage an insurer might otherwise have if it were permitted to collect the premium but retain its option of approving or disapproving the reinstatement. It would, if the rule were otherwise, permit the insurer to have the benefit of the insured's premium payment while assuming no risk of loss. This is not to say that the insurer could not investigate to determine if the actual facts were other than as stated in the application or if there were elements of fraud present. See Colorado Life Co. v. Winegarner, 95 Colo. 261, 35 P.2d 860 (1934). This was not the case here. If at the time of mailing of the application to reinstate there then existed no valid objection to the form or substance of the application, and there did not, the insurer could do but what it was bound to do—grant reinstatement. The accidental death of the insured due to a shooting in no way affected the insurer's right to approve or reject such application after the insured had fully complied with the conditions of his contract. See Officer v. New York Life Ins. Co., 73 Colo. 495, 216 P. 253 (1923); Bowie v. Bankers Life Co., 105 F.2d 806 (10th Cir. 1939); Republic Life Ins. Co. v. Craige, 186 Okl. 692, 100 P.2d 281 (1940); Kennedy v. Occidental Life Ins. Co., 18 Cal.2d 627, 117 P.2d 3 (1941); Prudential Ins. Co. v. Union Trust Co., 56 Ind.App. 418, 105 N.E. 505 (1914); Kahn v. Continental Casualty Co., 391 Ill. 445, 63 N.E.2d 468 (1945); Annot., 105 A.L.R. 478 (1936) as supplemented at 164 A.L.R. 1057 (1946). The insured's cause of death was in no manner related to his proof of insurability and thus would not affect his application for reinstatement or any action thereon by the company.

Having invoked his valuable property right of reinstatement, the insured mailed his application which contained satisfactory evidence of insurability. The insured was objectively insurable at the time of mailing. As previously stated, the insurer was bound to reinstate. Such reinstatement did not effect a new contract but merely reinstated the old policy. "Under such a policy as this one the lapse for non-payment of premiums does not make necessary the formation of a new contract, but the reinstatement, when effected, merely cancels the forfeiture, leaving the original contract in full force." Froehler v. North American Life Insurance Co., 374 Ill. 17, 27 N.E. 2d 833, 836 (1940). The notice of reinstatement sent to plaintiff does not refer to commencement of a new policy but merely reinstates, by reference thereto, the original policy. It thus undermines the argument that a new contract was created. In this respect the original policy gave the insured the absolute contractual right which was exercised within the five year period. Conditions were sought to be imposed besides those agreed to in the policy. As stated earlier, these variances were without consideration and were invalid to the extent they conflicted with the policy. The contract of insurance herein was merely suspended and upon compliance with its reinstatement proviso, the policy was reinstated as if no lapse or forfeiture had ever occurred—the policy being made effective retroactive to the date of submission of payment and evidence of insurability, June 12, 1973. The right of reinstatement having been reserved and there being no subsequently effective modifying agreement in the original policy, it was controlled by those terms. In such a case, the application for reinstatement standing alone was not a contract. The application was not a new contract but merely the first step in complying with the provisions for reinstatement. See Gressler v. New York Life Insurance Co., 108 Utah 182, 163 P.2d 324, above, and cases cited therein; Couch on Insurance 2d § 69:29.

The Court is of the opinion that the insured had a right of reinstatement created by the contract of insurance; that the conditions attached to that right under the policy were fully met; that the conditions supplied by the application for reinstatement contrary to or in conflict with the contract were void for want of consideration; that the insurability of the insured was to be determined, on a reasonable basis, as of

# 1184

the date of mailing of the application; that the insured was insurable on an objective basis on that date; that the policy was effectively reinstated; that such reinstatement did not constitute a new contract but merely revived and continued the original policy; and that the insured was effectively covered by the policy and the plaintiff is entitled to the proceeds.

Plaintiff also seeks to recover by her complaint attorney's fees, interest and costs. The allowance of prejudgment interest and costs is directed to the discretion of the Court. See Royal Indemnity Co. v. United States, 313 U.S. 289, 61 S.Ct. 995, 85 L.Ed. 1361 (1941); St. Paul Mercury Indemnity Co. v. United States, 201 F.2d 57 (10th Cir. 1952). By statute, the State of Wyoming permits a court to award attorney's fees in an action against an insurance company where the refusal to pay is "unreasonable or without cause . . . ." See Wyo.Stat. 26.1–328.1 (Cum.Supp.1973). In its most recent pronouncement on the subject of attorney's fees, the Supreme Court stated:

"The so-called 'American Rule' governing the award of attorneys' fees in litigation in the federal courts is that attorneys' fees 'are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor.'" F. D. Rich Co., Inc. v. Industrial Lumber Co., 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974).

The Supreme Court disallowed the award of attorneys' fees in what was a Miller Act case, 40 U.S.C. § 270a et seq. This case presents issues not heretofore decided in this jurisdiction. It does not appear that the refusal was unreasonable or without cause or that it was made other than in good faith. Accordingly, attorney's fees will not be allowed.

This memorandum sufficiently states the findings of fact and conclusions of law and no additional findings or conclusions will be necessary. Plaintiff's Motion for Summary Judgment will be granted.