## PARKER v. CALIFORNIA STATE LIFE INS. CO.

No. 5402.   Decided January 5, 1935.   (40 P. [2d] 175.)

*Ingebretsen, Ray, Rawlins & Christenson,* of Salt Lake City, for appellant.

*H. L. Mulliner* and *L. L. Robinson,* both of Salt Lake City, for respondent.

BATES, District Judge.

This action was brought by plaintiff to recover upon an accident insurance policy issued by the defendant upon the life of plaintiff's son, Rulon R. Parker. The policy was issued

March 23, 1929, and the first annual premium paid. The insured did not pay the second annual premium, which became due on the 23d of March, 1930. On the 15th of April, 1930, the insured, upon condition of the policy being continued in force, entered into an agreement with the defendant under the terms of which it was provided that the insured would pay cash at that time in the sum of $6.52 and execute and deliver to defendant a promissory note in the amount of $20 in payment of the second annual premium. The promissory note so executed by the insured contained the following provision:

"That if this note is not paid on or before the date it becomes due, it shall thereupon automatically cease to be a claim against the maker and said company shall retain said cash as part compensation for their rights and privileges hereby granted and all rights under said policy shall be the same as if said cash had not been paid nor this agreement made."

The note also bears a stamped indorsement as follows:

"Lapsed, Oct. 23, 1930."

The note was not paid on its due date, September 23, 1930. On the 26th of September, 1930, the defendant mailed a letter from its Salt Lake office to the insured informing him that because of his failure to meet the note the insurance was delinquent. They retained the note, suggesting that they believed the default to be an oversight, and inclosed a blank paper to be used by the insured in applying for reinstatement. The defendant received no reply, and on the 4th of November, 1930, they again wrote from the Salt Lake office as follows:

"You have not told us why the balance of the premium as called for on the extension note was not paid. We feel confident that it is not your intention to sacrifice this policy altogether, and assume, perhaps, conditions were not favorable for your meeting the premium as you had expected.

"If such is the case, we are wondering if you would like to receive a further extension of time. In that event, could you make a deposit of $3.00 or $4.00 now, if we extend the time for meeting the balance?

Any amount you remit will be credited on the premium when the balance of the note is paid, and by proceeding on this basis, we will be able to act on your application for reinstatement now instead of waiting until the full amount of arrears is taken care of.

"For your convenience, we are enclosing a reinstatement form. Please sign and return this as soon as possible."

The last mentioned letter, together with the blank application for reinstatement, was received by the insured on the morning of November 5. He immediately filled out the application blank and mailed it, together with a check for $5 to the local office of the company at Salt Lake City, Utah, where it was received on the 7th of that month. The application when filled out gave the company information as to the health and occupation of the insured and contained a warranty of the truthfulness of the representations made. The reinstatement application on the form accompanying the letter, as signed and forwarded by the insured, also contained the following statement which is relied upon by the defendant:

"I further agree that said policy shall not be considered reinstated by reason of any cash paid or settlement made in payment of or on account of said premium until this certificate shall be approved by the home office of the company at Sacramento, California."

After the application and check were mailed and before they were received by the defendant at their office in Salt Lake City, Utah, the insured was accidentally killed. When the application to reinstate and check were received by the home office, they had been informed of the death of the insured and as a result returned the application to reinstate and the check by mail to Joseph, where it was received and held by the father of the insured, John A. Parker.

The case was tried to a jury in the district court of Salt Lake county and a verdict returned in favor of Mary C. Parker, the beneficiary under the terms of the policy. From the verdict and judgment, the defendant has appealed.

The defendant contends that the policy lapsed because of the failure of the insured to pay the note given for the premium on the date when it became payable, and that the rule is particularly applicable in this case because ■ of the provision in the note that, if not paid when due, it automatically ceased to be a claim against the insured. In support of their position they refer to *Diehl* v. *American Life Insurance Co.*, 204 Iowa, 706, 213 N. W. 753, 53 A. L. R. 1528, from which they quote:

"An agreement by a life insurance company extending the time of payment of a premium and accepting the policyholder's note, which contains provisions that it is not accepted as payment of the premium and that the nonpayment of the note at maturity shall ipso facto lapse the policy, is valid, although the policy does not in terms state that nonpayment of a note given for a premium shall render the policy null and void."

The rule as announced can have no application in this case. The instrument referred to as a promissory note is in fact not a note at all. It contains no unconditional promise to pay. On the other hand, it expressly provides that, if not paid when due, it shall automatically cease to be a claim against the maker. Neither does it add to nor detract from the terms of the contract of insurance, because of the provision that, if not paid when due, all rights under the policy shall be the same as if said cash had not been paid nor this agreement made. The only effect that can be given to the instrument in question is to extend the period of insurance to the due date of the instrument for the consideration of the moneys paid. When the insured failed to make the payment of the premium at its due date or within the extended period, the policy lapsed under its own terms but subject to the reinstatement privilege, unless the defendant by its conduct waived the forfeiture. Upon this question there is no difference between the parties.

Where rights of forfeiture are created by contract, they are for the benefit of the party privileged to declare the forfeiture. Such party may, if he desires, waive his rights.

Forfeitures have not been and are not now favored by the law. Courts have always given a liberal interpretation to the acts and conduct of a party holding a right of forfeiture. Any acts or statements suggesting an intention to keep a contract alive are liberally construed as a waiver of the right of forfeiture. This court in a recent case entitled *Columbia Airways, Inc.,* v. *Stevens,* 80 Utah 215, 14 P. (2d) 984, 986, announced the rule as follows:

"If, therefore, the seller, notwithstanding the default, does not avail himself of his appropriate remedy, but so acts as to reasonably warrant the inference that he regards the buyer's rights as still subsisting, he will be deemed to have waived the default, and he will not be at liberty to declare a forfeiture until he has in some way put the buyer, whom he has thus misled, in the attitude of a fresh default."

Although the note executed on the 23d of March provided that, if the note was not paid, it would automatically cease to be a claim against the maker, still the company continued its efforts to collect. It might be said that they were attempting to collect upon the premium, but that can make no difference. They were, in fact, attempting to collect from the insured money due as a payment in advance for the insurance. There was no justification for attempting to collect either upon the note or the premium unless there was a recognition by the company of an obligation on their part under the policy.

It cannot be said that there was anything due them because of the risks thus far carried. That had been paid in cash. If the attempt be construed as an attempt to collect upon the note, then the note, being a subsisting obligation under their construction, would operate to extend the insurance for the full year. If it be held that they were attempting to collect the premium, then it follows of necessity that they recognized the policy as a subsisting obligation. In either event the attempt to collect must be held to be a waiver of the right to declare a forfeiture.

In *Loftis* v. *Pacific Mut. Life Ins. Co. of Calif.*, 38 Utah, 532, 114 P. 134, 137, this court says:

"The contract of insurance in this case provided that, in case any installment of the premium was not paid when due, all rights under the policy lapsed or the policy ceased to be effective, yet such a provision was for the benefit of appellant, and it had the undoubted right to treat the policy as in force, although cause for forfeiture existed. That insurance companies may waive prompt payment of policies, although such payment is of the essence of the contract of insurance and may continue and treat policies in force after all rights thereunder had lapsed by reason of a provision therein that nonpayment of the premium or any part thereof shall cause the policy to become void and of no force or effect, is too well settled to admit of dispute. * * * The following cases are to the effect that, in case of a default in payment of a premium the insurance company makes an attempt to collect such premium or a premium falling due after the first default, in case such default would terminate the insurance; such an attempt would be considered as evidence indicating an election on the part of the company to waive the forfeiture and to keep the policy in force. * * * Whether a waiver has taken place or not ordinarily depends upon the peculiar facts and circumstances of a given case, and, in most instances, presents a question of fact rather than of law, or at least a mixed question of law and fact. Where a waiver prevents a forfeiture, the law ordinarily permits a liberal construction to be placed on the acts of the party waiving with the view of bringing about a waiver of such a forfeiture. * * * In choosing to keep the policy in force by seeking payment for the past-due premiums after the policy had by its terms lapsed, appellant assumed the risk that it might at any time be called upon to answer for the consequences of the very accident which resulted so disastrously to the insured."

The conditions for reinstatement as set out in the policy are:

"At any time within five years after default in payment of any premium hereon, this policy may be reinstated to its original form and amount upon receipt of evidence of insurability satisfactory to the company, together with payment of arrears of premiums and the other indebtedness with compound interest thereon from date of default at a rate of not exceeding 6% per annum."

The defendant waived the forfeiture when the second premium became due in March, 1930, by the supplemental

agreement of April 15. Although the letter of September 26 was written informing the insured that the insurance was delinquent, still in the same letter they request the applicant to send to them the amount due on the delinquent premium, together with information as to the health of the insured, and inform him that they will advise him in due time as to what action is taken. And again, in the letter of November 4, they ask the insured if he would like to receive a further extension of time, suggesting, "in that event could you make a payment of $3.00 or $4.00 if we extend the time for meeting the balance?"

The defendant voluntarily fixed a definite sum less than the amount due, and promised the insured that, if he would pay that sum, they would immediately act upon his application for reinstatement. That is a far different proposition from delaying reinstatement until after action by the home office in California. True, the application for reinstatement had a provision in it to the effect that the policy would not be considered reinstated until approved by the home office. But that is a part of the printed matter in an application blank sent by the defendant to the insured for the convenience of the insured. There is no language in the letter suggesting in any way that the insured would have to await the action of the home office. Neither was there any suggestion in the letter that the language of the application blank was intended as placing any additional burden upon the original contract relation. In view of these conditions, it is plain that no such limitation was in the minds of either of these parties when the correspondence of November 4 and 5 was had, and it should not be given effect in construing the correspondence in its relation to the original contract.

This case is not analogous to the *Ballard Case*, 82 Utah 1, 21 P. (2d) 847, recently decided by this court. In that case no attempt was made by the insured to furnish satisfactory evidence of insurability. Neither could it have been done. When the application for reinstatement was made, it is evi-

dent that the insured was suffering from a serious afflic-
tion from which he died. The insurance policy had lapsed for
nonpayment of premiums and the insurance company had
so informed the insured. The terms of the policy providing
for reinstatement made the furnishing of evidence of insur-
ability and payment of past-due premiums conditions. They
were not complied with and when the application for rein-
statement was made it was impossible to comply with the
conditions. *Ballard* v. *Beneficial Life Ins. Co.*, 82 Utah 1,
21 P. (2d) 847. In this case the conditions of the policy in
so far as they were not waived were complied with by the
insured prior to his death. The information furnished in
the application to reinstate showed that the insured was in
good health, engaged in farming, and of good habits. In fact
a comparison of the application to reinstate with the appli-
cation for the insurance shows substantially the same con-
ditions. The insurer neither approved nor disapproved the
application. The application was never forwarded to the
home office. On the contrary, when they learned of the death
of the insured while the letter was in transit, they returned
it and have ever since stood squarely on the ground that
death before formal approval defeated the right of the in-
sured and his beneficiary.

In *Officer* v. *New York Life Ins. Co.*, 73 Colo. 495, 216 P.
253, 256, a case in many respects similar to the facts in this
case, the Colorado court quotes with approval the following
language used by the Indiana court in *Prudential Ins. Co.
of Amer.* v. *Union Trust Co.*, 56 Ind. App. 418, 105 N. E. 505:

"* * * On the other hand, if at the time of the filing of such appli-
cation to revive, and the signing and delivery of the necessary papers
accompanying it, there then existed no valid objection to the form or
substance of such application, or papers or the proof furnished there-
with, appellant, under its contract, could do but one thing, viz., re-
vive the policy, and such revival would relate back to the time of the
application to revive, and the mere fact that the insured, after he had
fully complied with the conditions of his contract, died from a cause
in no way involved in his proof of insurability which accompanied his
revival application, but wholly the result of accident, could in and of

itself furnish no valid ground or excuse for a refusal by appellant to revive such policies. The death of the insured in no way affected appellant's right to approve or reject such application to revive, but such death foreclosed the possibility of amendment of such application to revive, or the furnishing of additional proof thereunder. Nor should the fact that the applications to revive did not reach the home office until after the death of the insured, and hence could not have received the approval of such office while the insured was alive have a controlling influence, in view of the terms of the policies here involved. This is so for several reasons. As before stated, the policy by its terms provides for a lapse of insurance on account of default in payment of premiums and not for a forfeiture. It recognizes that the insured has the right to insurance during the period therein provided, on the performance by him of the conditions therein contained. * * *"

When the insured in this case had fully complied with every requirement made by the defendant as a condition of reinstatement, leaving nothing but the formal approval of the company, the mere fact that he died from causes that in no way affected his insurability did not affect his right to have the company approve the application to reinstate. Otherwise the language of the authorities to the effect that the revival when approved relates back to the time of the application to reinstate would be meaningless. There is nothing in the contract of insurance that requires the formal approval by the company of an application to reinstate; its only requirement is that evidence of insurability satisfactory to the company be furnished and the payment of premiums due. The letter of November 4 cannot be construed as meaning anything less than a waiver of payment of the money due except as to $3 or $4. No question has been raised and none could consistently be raised as to the sufficiency of the evidence furnished to show insurability satisfactory to the company. Even though it should be held that the provision in the application to reinstate to the effect that the policy should not be considered reinstated until approval by the home office in Sacramento, still it was the insured's right to have the approval during his life, and the accidental death does not defeat that right.

The fact that the evidence of insurability and the payment of that portion of the amount due from the insured demanded by the company had not been received in the office of the insurer when the insured met his death can make no difference. The insurer had chosen the mails as a proper means of communication with the insured. When they made the offer of the conditions under which the policy would be reinstated, they in effect made the mails their agency for the purposes of the transaction. When the insured deposited the application to reinstate together with the evidences of insurability and partial payment in the mail at Joseph, Utah, he complied with their terms. From that moment the letter had passed out of his power and into the control of the insurer. The rule is well stated in 9 Cyc. 295, as follows:

"Where a person makes an offer and requires or authorizes the offeree either expressly or impliedly, to send his answer by post or telegraph, and the answer is duly posted or telegraphed, the acceptance is communicated and the contract is complete from the moment the letter is mailed or the telegraph sent. The request or authorization to communicate the acceptance by mail is implied in two cases, viz.; (1) Where the post is used to make the offer as where a person makes an offer to another by mail and says nothing as to how the answer shall be sent."

Exceptions are taken to a number of instructions given to the jury by the trial court, but, in the view of the case that we take, the sufficiency of the instructions make no difference. The case was submitted to the jury upon the theory that the questions of forfeiture, waiver, and reinstatement were questions of fact to be determined by the jury. There is no substantial dispute in the evidence with reference to any of these matters. It may be that different inferences can be drawn from the facts given in evidence as to whether or not a forfeiture was declared by the insurer or whether or not the forfeiture was waived, but there can be no difference of opinion with reference to the correspondence of November 4 and 5. The insurer asked

the insured to make a partial payment of past-due premiums, to apply for reinstatement, and to furnish evidence of insurability satisfactory to the company. All that the insured did, using the method of communication adopted by the company. There is no room for discussion as to what these parties intended. The only question is as to the legal effect of what was done in view of the fact that the insured was accidentally killed before the company approved the application to reinstate. That question was for the court. In view of the fact that the verdict of the jury is in harmony with what the judgment of the court should have been, the question of the sufficiency of the instructions is immaterial. If there was error, it was harmless. We will therefore not consider them further.

Judgment affirmed, with costs to respondent.

STRAUP, C. J., and ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.

MOFFAT, J., being disqualified, did not participate herein.