GRESSLER et al. v. NEW YORK LIFE INS. CO. et al.

No. 6775. Decided November 10, 1945. (163 P. 2d 324.)

See 44 C. J. S., Insurance, sec. 52. Date when coverage begins upon reinstatement of insurance policy after default. Notes, 77 A. L. R. 357, 98 A. L. R. 345. See, also, 29 Am. Jur., 252.

For former opinion, see 108 Utah 173, 156 P. 2d 212.
*Critchlow & Critchlow*, of Salt Lake City, for appellants.
*Romney & Nelson*, of Salt Lake City, for respondents.

WOLFE, Justice.

In a former opinion written in this case and appearing in 156 P. 2d 212, 213, we reversed. For the facts in this case reference is made to that opinion. We reversed on the ground that the provision in the policy reading:

> "This policy may be reinstated at any time within five years after any default upon presentation at the Home Office of evidence of insurability satisfactory to the Company and payment of overdue premiums with interest * * *."

permitted the insurer to have a reasonable time to determine whether evidence of insurability presented was satisfactory to it and that in law such reasonable time had not elapsed.

On petition for rehearing it was correctely assumed —and in this assumption the defendant joined—that  we had, in the original opinion, laid down the following propositions as the law of the case, to wit:

> "1. The original contract, the policy itself, was a Utah contract, and the nature of the rights and obligations flowing from the policy is governed by Utah law.
> "2. The policy was not entirely terminated upon default of premium payment, but the insured still had a contractual right under the policy to fully reinstate it upon compliance with the conditions for reinstatement contained in the policy.
> "3. Insured's application for reinstatement was neither an offer to enter into a new contract of insurance nor an offer to enter into a contract to reinstate the old policy. It was the first step taken to comply with the conditions of reinstatement."

Whatever may be done in this opinion those propositions are adhered to and will not be discused. The respondents contended that the situation in this case could not be distinguished from that in the case of *Parker* v. *California State Life Insurance Company*, 85 Utah 595, 40 P. 2d 175, 176, and that we had in effect overruled that case, while at the same time approving it in principle. Because of ambiguity in our opinion in that regard and in order to determine whether there was any material distinction between this case and the Parker case and if not whether we desired to adhere to the principles laid down in that case we granted rehearing. We think there are some material differences between the facts of this and the Parker case which make the two cases distinguishable in the law. But as will be later noted the Parker case apparently did lay down the rule that where the applicant for reinstatment answered the questions propounded in the blank application in such manner as on its face to show insurability, the Company must be satisfied, at least unless it could show that they were incorrectly answered.

The Parker decision seems to rest partly on the ground that the Company waived a forfeiture. In that case the Company had accepted for the premium due March 23, 1930, what was called a promissory note dated April 15, 1930, by its terms due September 23, 1930, which "note" provided that if not paid on or before the due date it should automatically cease to be a claim against the maker. The Company could then retain the cash paid at the time the "note" was made and "all rights under said policy shall be the same as if said cash had not been paid nor this agreement made." The "note" was not paid and if nothing more had been done it is assumed that the policy would have lapsed. But the Company wrote to the insured on November 4, 1930, offering him a further extension of time "for meeting the balance" if he would make a deposit of $3 or $4. It also enclosed a blank application for reinstatement. The "insured" filled in the application blank, answering the questions as to health in such a way as to be satis-

factory on their face. This application with $5 he mailed to the Company on November 5, 1930. On the night of November 5th he was accidentally killed. The application blank and check for $5.00 were received by the Company on November 7, 1930, and returned by the local agent of the Company when he learned of decedent's death.

The Company argued in its brief that the failure to pay the note dated April 15, 1930, lapsed the policy; the respondent that the letter of November 4, 1930, showed an intention to waive the lapse and on the making of a small payment extend the time for payment of the premium. This court in its decision said:

"The defendant contends that the policy lapsed because of the failure of the insured to pay the note given for the premium on the date when it became payable, and that the rule is particularly applicable in this case because of the provision in the note that, if not paid when due, it automatically ceased to be a claim against the insured. In support of their position they refer to *Diehl* v. *American Life Insurance Co.*, 204 Iowa 706, 213 N. W. 753, 53 A. L. R. 1528, from which they quote:

\* \* \* \* \*

"The rule as announced can have no application in this case. The instrument referred to as a promissory note is in fact not a note at all. It contains no unconditional promise to pay. On the other hand, it expressly provides that, if not paid when due, it shall automatically cease to be a claim against the maker. Neither does it add to nor detract from the terms of the contract of insurance, because of the provision that, if not paid when due, all rights under the policy shall be the same as if said cash had not been paid nor this agreement made. The only effect that can be given to the instrument in question is to extend the period of insurance to the due date of the instrument for the consideration of the moneys paid. When the insured failed to make the payment of the premium at its due date or within the extended period, the policy lapsed under its own terms but subject to the reinstatement privilege, *unless the defendant by its conduct waived the forfeiture.* Upon this question there is no difference between the parties. (Italics added.)

"Where rights of forfeiture are created by contract, they are for the benefit of the party privileged to declare the forfeiture. Such party may, if he desires, waive his rights. Forfeitures have not been and are not now favored by the law. Courts have always given a

liberal interpretation to the acts and conduct of a party holding a right of forfeiture. Any acts or statements suggesting an intention to keep a contract alive are liberally construed as a waiver of the right of forfeiture.

\* \* \* \* \*

"Although the note executed on the 23d of March [should be April 15th] provided that, if the note was not paid, it would automatically cease to be a claim against the maker, still the company continued its efforts to collect. It might be said that they were attempting to collect upon the premium, but that can make no difference. They were, in fact, attempting to collect from the insured money due as a payment in advance for the insurance. There was no justification for attempting to collect either upon the note or the premium unless there was a recognition by the company of an obligation on their part under the policy.

"It cannot be said that there was anything due them because of the risks thus far carried. That had been paid in cash. If the attempt be construed as an attempt to collect upon the note, then the note, being a subsisting obligation under their construction, would operate to extend the insurance for the full year. If it be held that they were attempting to collect the premium, then it follows of necessity that they recognized the policy as a subsisting obligation. In either event the attempt to collect must be held to be a waiver of the right to declare a forfeiture."

We have quoted the above excerpts from the opinion at length because it thus appears that one of the bases for the decision was that the Company had waived its right to forfeit, or that the time for the payment of the premium had by it been extended, whichever horn of the dilemma above posed by the court in the Parker case one desires to adopt. If at the time of decedent's death (November 5, 1930) the contract of insurance had not lapsed but the Company still recognized it as in effect what was said in the opinion as regards the reinstatement provision would seem to have been unnecessary. Recovery could have been had for the face of the policy then in force, plus interest, less the premium due, amounting to $20, which was what the jury awarded.

But the court proceeds to consider the provision in the policy relating to reinstatement and to base its decision

not only on waiver of the forfeiture provision but on the ground that there was a reinstatement of the policy at the time the letter of the applicant together with the answers to the questionnaire was mailed on November 5, 1930. This provision is in effect the same as the provision in the instant policy with one material exception, to wit, that in the instant case the provision states that "upon presentation at the Home Office of evidence of insurability satisfactory to the Company," etc., whilst in the Parker Case the reinstatement provision in the policy said nothing about such evidence being presented at the home office. The application for reinstatement required that evidence to be presented at the home office at Sacramento. Appellant on rehearing in this case urged this difference in the reinstatement provisions of the two policies as furnishing a material difference in the two cases, citing from the Parker decision the following:

> "There is no language in the letter suggesting in any way that the insured would have to await the action of the home office. Neither was there any suggestion in the letter that the language of the application blank was intended as placing any additional burden upon the original contract relation. In view of these conditions, it is plain that no such limitation was in the minds of either of these parties when the correspondence of November 4 and 5 was had, and it should not be given effect in construing the correspondence in its relation to the original contract."

Also called to our attention in this regard in the Parker case is the following language of that decision:

> "The defendant voluntarily fixed a definite sum less than the amount due, and promised the insured that, if he would pay that sum, they would immediately act upon his application for reinstatement.
>
> "That is a far different proposition from delaying reinstatement until after action by the home office in California. True, the application for reinstatement had a provision in it to the effect that the policy would not be considered reinstated until approved by the home office. But that is a part of the printed matter in an application blank sent by the defendant to the insured for the convenience of the insured."

These excerpts are quoted by appellant as evidence that this court did consider the omission in the policy of the requirement that the evidence of insurability be furnished to the Home Office was material. Because this case will be resolved on points more fundamental we refrain from any further consideration of this difference in the two policies.

Appellant also contends that this case differs from the Parker case in that the Company in that case considered there was in existence a binding obligation to pay the back premium or a recognition by the Company that the policy had not lapsed—a matter we have already discussed—whereas in this case there was only an ex parte application to reinstate which application had never been acted on by the defendant. It is further contended that Gressler made an application for a loan which if granted would be applied to the original indebtedness against the policy and the balance upon the overdue premiums with interest; that the application itself specified that "advice of the completion of the loan and check for the proceeds should be sent to the address below" revealing that the application itself showed something more to be done to complete the loan; that the loan agreement signed by Gressler accompanying the application for reinstatement was never accepted by the defendant. The loan agreement reads in part that the Company

"has this day advanced the undersigned the sum of $194 upon security of the value of the policy, which loan with interest thereon is an indebtedness against and a lien upon said policy."

It therefore appears that the loan was to go into effect if and when the policy was in effect, that is, if and when the policy was reinstated. The Company had to depend on the policy for its security. If the policy had been reinstated it may be that the loan would be contemporaneously completed. If the policy was not in effect the loan was not completed. This leaves us still with the question as to whether the policy was at the time of applicant's death in effect.

For convenient reference we repeat here the relevant portion of the provision on reinstatement. It reads:

"This policy may be reinstated at any time within five years after any default, upon presentation at the Home Office of evidence of insurability satisfactory to the Company and payment of overdue premiums with interest  *  *  *."

We held in the original opinion that

"as to the evidence which will be deemed sufficient to satisfy the company, the overwhelming weight of authority is to the effect that the company, under such reinstatement clause, cannot be arbitrary or capricious, but that evidence which should be satisfactory to a reasonable insurer is all that is required."

We adhere to this principle.

In the Parker case it was stated:

"When the insured in this case had fully complied with every requirement made by the defendant as a condition of reinstatement, leaving nothing but the formal approval of the company, the mere fact that he died from causes that in no way affected his insurability did not affect his right to have the company approve the application to reinstate. Otherwise the language of the authorities to the effect that the revival when approved relates back to the time of the application to reinstate would be meaningless. There is nothing in the contract of insurance that requires the formal approval by the company of an application to reinstate; its only requirement is that evidence of insurability satisfactory to the company be furnished and the payment of premiums due.  *  *  *  No question has been raised and none could consistently be raised as to the sufficiency of the evidence furnished to show insurability satisfactory to the company."

It cannot definitely be ascertained from the opinion in that case what evidence had been presented, but it appears from the opinion that

"the application when filled out gave the company information as to the health and occupation of the insured and contained a warranty as to the truthfulness of the representations made."

. A reading of the briefs in the Parker case reveals that the answers to the questions asked on the application for reinstatement constituted the only evidence of insurability presented by the applicant. Therefore we conclude that this court meant to lay down the principle in the Parker case that where an applicant for reinstatement answers the questions submitted with the blank application and the answers to such questions should have satisfied a reasonable insurer, the policy is automatically reinstated. Whether the Company would have the right on investigation which turned up information showing the answers to have been untruthful, or information which would otherwise show that the applicant was not insurable, to cancel the reinstatement or be relegated to a defense on the warranty does not appear in the opinion. What does appear is that the court concluded that when an applicant in the application answers the questions in such a manner as to show insurability and then dies by causes not related to insurability before anything more could be done, the reinstatement is effected as of the date when the application is mailed. Whether the Company could still pursue a collateral investigation to see if the answers were true does not appear. The Parker case is grounded on the case of *Officer* v. *New York Life Ins. Co.*, 73 Colo. 495, 216 P. 253, which in turn relied on the case of *Prudential Ins. Co. of America* v. *Union Trust Co.*, 56 Ind. App. 418, 105 N. E. 505, 509, where it was stated:

" '* * * On the other hand, if at the time of the filing of such application to revive, and the signing and delivery of the necessary papers accompanying it, there then existed no valid objection to the form or substance of such application, or papers or the proof furnished therewith, appellant, under its contract, could do but one thing, viz., revive the policy, and such ·revival would relate back to the time of the application to revive; and the mere fact that the insured, after he had fully complied with the conditions of his contract, died from a cause in no way involved in his proof of insurability which accompanied his revival application, but wholly the result of accident, could in and of itself furnish no valid ground or excuse for a refusal by appellant to revive such policies. The death of the insured in no

way affected appellant's right to approve or reject such application to revive, but such death foreclosed the possibility of amendment of such application to revive, or the furnishing of additional proof thereunder. Nor should the fact that the applications to revive did not reach the home office until after the death of the insured, and hence could not have received the approval of such office while the insured was alive, have a controlling influence, in view of the terms of the policies here involved. * *· *' "

We cannot accept this view that when the applicant filed the application to revive together with the necessary papers accompanying it, and *"there then existed no valid objection to the form or substance of such application, or papers or the proof furnished herewith"* the Company could "do but one thing, viz., revive the policy." (Emphasis added.) The condition for reviving the policy was not only the presentation at the Home Office of evidence of insurability but such evidence "satisfactory to the company." This did not mean that answers to questions submitted by the Company which would show insurability must be accepted by the Company, nor that the Company could not ask further questions. The phrase "satisfactory to the Company" implies that the Company must have opportunity to determine whether the evidence is satisfactory to it and that means an opportunity to conduct an investigation to determine whether the answers were correct or whether the investigation disclosed further matters in regard to which the Company may desire to interrogate the applicant. Such was necessarily implied in our original opinion which held that the insurer must have a reasonable time in which to act. Indeed we do not understand that the respondents contend to the contrary. They concluded, however, that the revision went into effect automatically if the proof submitted with the application on its face showed insurability subject to a defeasance if it was discovered that the answers were untrue. And it may be that in the end the practical results in this case will be the same.

Under our view the death of the applicant "from a cause in no way involved in his proof of insurability which

accompanied his revival application, but wholly the result of accident" can make no difference in the insurer's rights. If he had líved the insurer could investigate whether the evidence presented was satisfactory to it. If he died it could do likewise. It might be that death would make its investigation more difficult. It would certainly put the applicant beyond the possibility of submitting to further inquiry and if the death were from causes unconnected with insurability, the Company might have to suffer the results of any such disadvantage. If after investigation no adverse facts were found to have existed at the time the application was filed the policy would have to be reinstated whether he was dead or alive. *Kennedy* v. *Occidental Ins. Co.,* 18 Cal. 2d 627, 117 P. 2d 3. It is admitted that the temptation of the insurer to find insurability unsatisfactory after death might be great but as before said, it could not turn down an application where the proof of insurability after investigation was such that a reasonable insurer would have accepted it. Reasonableness cannot depend on whether the insured is alive or dead. The matter then comes down to this: If the applicant for reinstatement furnishes proof of insurability satisfactory on its face the insurer must have a reasonable time to check on the answers and further question the applicant if available on matters relating to insurability just as in the case of an original application for insurance; that if after such investigation, whether the applicant is then dead or alive, the proof is such that a reasonable insurer should be satisfied of insurability, the Company cannot refuse to reinstate; that it must make its investigation within a reasonable time or it may be deemed that the Company is satisfied; that if the applicant is no longer available because of death due to causes not connected with insurability, the rights of the insurer are not changed although it may be at somewhat of a disadvantage because the applicant is unavailable; that the statement made in the Parker case that "it was the insured's right to have the approval during his life, and the accidental death does not defeat that right" is inaccurate.

What should have been said was that the "accidental death does not defeat that right" of the applicant to have the policy reinstated if his proof turns out to be satisfactory. Nor by the same token does it defeat the right of the insurer to determine whether the proof is satisfactory. The whole matter really turns around the narrow point as to whether the phrase "upon presentation at the Home Office of evidence of insurability satisfactory to the Company," is to be confined to the answers accompanying the application or permits of a reasonable opportunity on the part of the Company to investigate to determine if the evidence presented is really satisfactory. We think the latter is implied in the language. If a company agrees to employ X if he presents evidence at the Home Office of his honesty and competency satisfactory to the company we do not think the company would be confined to determining whether the answers to questions propounded in an application blank furnished the applicant were satisfactory on their face. We concede that insurance policies should, in case of ambiguity, be construed in favor of the insured and against the insurer who drew the policy because of the known fact that prospects for insurance do not have the time nor ordinarily the ability, at least under the pressure of solicitation, to carefully examine and weigh the many printed provisions of a policy. They may too easily labor under the delusion that they are covered, only for their dependents to find that some exception in the policy defeats their rights as beneficiaries. But certainly these reasons do not apply with the same force to a provision for reinstatement where the insured is in default and has ample time to ascertain his rights after default and the consequences thereof before or after default. We see no reason for making identical language or identical import of language mean one thing in insurance contracts and something different in other contracts unless the content of those other contracts invests the language with a different meaning or intent. Insurance companies should not be the orphan litigants of the courts.

We have up to this time considered this case as if the death were accidental as in the Parker and the Officer cases. How stands the matter in the instant case where Gressler's death was due to his own hand? After considerable deliberation, we think the principles above enumerated remain the same. The evidence of insurability must be determined as of the time of the application. The Company must have a reasonable time to make its investigation. While there is some question as to whether, if it transpires that investigation uncovers matters which make further questioning of the applicant necessary or advisable to determine insurability, the Company should suffer the same disadvantage as if the death had been accidental, we think the cause of death should make no difference in the principles applicable. It may be that if the Company could in good faith show that the death of the insured by his own hand materially and detrimentally prevented it from making such investigation as was necessary to determine whether the evidence presented was satisfactory, disadvantage of such consequence of the suicide should fall on the beneficiaries and not the Company. Be that as it may, while the matter of insurability cannot be determined as of the time of the death both as to moral and physical risk, the fact that the insurer died of his own hand may stimulate inquiry as to whether the situation at the time of the application was such as to cause him to commit suicide and if so whether it had to do with insurability.

Having decided in the original opinion that in law the Company did not have a reasonable time to determine whether it was satisfied as to insurability, a holding to which we adhere in this opinion, we come to a question not considered in that opinion but which we think is presented because of what was above said, an answer to which is necessary to guide the lower court in the disposal of this case.

The complaint sets up the policy, the death, proof of death and refusal to pay. The amended answer alleges that the policy expired on August 28, 1940, and sets up a

defense that the request for revival of the policy under the reinstatement provision had not been accepted by defendant and that said policy was not reinstated and further sets up the laws of the States of Washington and New York as applicable to the case, which laws were evidently construed by the Company to hold that action by the insurer reinstating the policy was necessary for reinstatement, the policy not being automatically reinstated. The reply denied that the negotiations between Gressler and the Company between August 22nd and 31st constituted an offer to reinstate. Thus the issue of law decided in this case was squarely presented to the trial court and in turn to this court. We have decided in that regard that the plaintiffs were in error on their conception of the law and have also decided that the Company should have a reasonable time to satisfy itself as to insurability, and that at the time of Gressler's death it did not have such reasonable time. The question remains as to whether the Company pursued after Gressler's death its right to satisfy itself as to his insurability within a reasonable time and if so whether it uncovered matters from which a reasonable insurer could determine whether Gressler's evidence of insurability was satisfactory. The complaint and reply proceeded on the theory that the policy had been reinstated and was therefore in existence either because the conditions for reinstatement had been fulfilled or because the Company by its conduct was estopped to deny the fact of reinstatement because of such alleged conduct and representations. We have decided that up to the date of death the policy was not reinstated. We do not think there has been litigated the issue as to whether it was reinstated because of unreasonable delay after the death in acting or because nothing was turned up by the Company if it pursued an investigation, which could be urged as a basis that the evidence of insurability was not satisfactory to it. We think the judgment of the trial court must be reversed but that our instructions contained in the original opinion must be withdrawn. Opportunity to amend the pleadings to raise these issues must

be given. This is not exactly the case of where a defendant might have pleaded a defense but failed to do so. In this case we have in respect to the holding that the policy was automatically reinstated at the time the questionnaire was mailed overruled the Parker case by which defendant had considered itself bound as the law of this jurisdiction. It did so in attempting to go around it by urging that the laws of Washington and New York applied. In this we held against it, but we also held against the plaintiffs in their contentions that the policy was automatically reinstated on August 31, 1940, with right only in the insurer to show by evidence that the answers to the questions propounded were untrue and thus defeat the alleged reinstatement by what in effect is analogous to a condition subsequent. For the reasons herein given the judgment of the trial court is reversed with instructions to permit such amendments of the pleadings as are proper in the light of this opinion and the law regarding amendments to pleadings and upon the issues so raised to proceed accordingly as in this opinion advised. The former decision (order) is to be deemed as withdrawn to this extent and the decision (order) in this opinion substituted therefor.

Such is the order.

LARSON, C. J., and McDONOUGH, TURNER, and WADE, JJ., concur.