PALMER et al. v. BROADBENT, Mayor et al.

No. 7997.   Decided Aug. 12, 1953.   (260 P. 2d 581.)

Concurring Opinion Aug. 19, 1953.

See 62 C.J.S. Municipal Corporations, sec. 166. Petition for referendum, form and contents of. 28 Am.Jur. Initiative, Referendum and Recall, sec. 19; 106 A.L.R., 555.

*Orville Isom,* Cedar City, for plaintiffs.

*Patrick H. Fenton,* Cedar City, for defendants.

WADE, Justice.

Plaintiffs, who with others are sometimes referred to as sponsors and petitioners, are residents and voters of Cedar City, Utah, and they petition this court for an extraordinary writ,[1] requiring the defendants, who are the members of the City Council and the City Recorder, to submit to the voters at the next regular city election, for approval

---

[1] See Rule 65B(a) U.R.C.P. which abolishes special forms of writs, and (b) (3) where the relief sought is to compel a person to perform an act required by law. Also see Section 20-11-16, U.C.A.1953.

or rejection, an ordinance granting the Southern Utah Power Company a twenty year electric franchise. This ordinance was passed by the City Council on February 19, 1953, and published on the 26th to become effective on March 21, 1953.[2]

On March 7th, sixteen days after enactment and fourteen days before the effective date, the sponsors filed a petition with the City Recorder for a referendum to the voters on that ordinance, together with an application for petition copies and circulation sheets to be bound in 15 sections to be printed in legal form. Whereupon the Recorder certified to a true and correct copy of such petition, and that she had received such petition on that day. On March 10th, after waiting the three days allowed by law therefor, the Recorder solicited three printers for bids on that printing job.[3] On that day without waiting for such bids, the sponsors presented to the Recorder the re-

[2] Section 20-11-24, U.C.A. 1953, provides that referendum petitions against an ordinance passed by the governing body of a city or town shall be filed thirty days after its passage; Section 20-11-1, U.C.A. 1953 provides that legal voters of the State by petition, may require a referendum before the law takes effect.

[3] Section 20-11-7, U.C.A. 1953, provides for the filing of such a petition and application with the Secretary of State; Section 20-11-23, U.C.A. 1953, provides that in cities and towns the manner of exercising the initiative and referendum powers shall be similar to the procedure prescribed for the State, and the duties required by the Secretary of State shall be performed by the City Recorder or Clerk. Section 20-11-8, U.C.A. 1953, provides for the acknowledgment of all the signatures to be placed on circulation sheets with the address of the signers; Section 20-11-10, U.C.A. 1953, provides the form of the Petition for Referendum; Section 20-11-11, U.C.A. 1953, requires the Secretary of State, upon the payment of the fees to cause to be printed copies of the form of petition including all required matter; Section 20-11-12, U.C.A. 1953, provides for the dividing of the petition into sections, with circulation sheets and other matter which must be contained therein; Section 20-11-13, U.C.A. 1953, provides the fee for filing the application, requires the solicitation of bids within three days after filing the application for printing the forms, and that within ten days after filing the application the sponsors shall be notified of the amount of the lowest and best bid and require the payment of such amount together with 50¢ per hundred for the circulation sheets, and within ten days after the payment of the required amount the petition copies and circulation sheets shall be made into sections as provided by law.

quired forms, which had been printed at their expense, with the request that she inspect and approve such forms and sign her name to the printed certificate with her name printed thereon and affix thereto the corporate seal of the City. These forms which were presented to the Recorder are conceded to be correct in every detail except that they were printed in 5½ instead of 6 point type and lacked the certificate of the true and correct number and title of the law as proposed for referendum.[4] They were printed at the same price and by the only printer who submitted a bid for such work to the Recorder. The Recorder refused to execute and record these forms without advice from the City Attorney and Council but did certify that she had received such petition and application and signed a certificate to a copy of the petition presented to her that such is a true and correct copy of the Petition for Referendum, this she retained in her office. Thereupon the sponsors took other copies of the forms submitted to the Recorder, which were bound in 15 sections, and proceeded to circulate them for voters' signatures. On March 11th, the sponsors paid the $10 filing fee for filing the Petition for Referendum, on the 12th, the City Attorney advised the sponsors that the Recorder refused to sign or attach thereto the corporate seal of the City to the forms presented to her, because they had failed to substantially comply with the statute and that all except one copy would be returned to them upon request, which was done on March 15, 1953.

On March 17, 1953, again taking the full ten days allowed therefor, the Recorder notified the sponsors that she had received a bid for the proposed printing, and that upon the payment of the amount of such bid plus 50¢ for the circulation sheets she would have the forms prepared for circulation. The statute allowed her 10 more days to accomplish this after receiving the required fee,[5] which would be at least 7 days after the time for filing the Petition for

[4]See Section 20-11-13, U.C.A. 1953.
[5]See Section 20-11-13, supra, also Note 3.

Referendum with the required number. of names signed and the County Clerk's certificate attached thereto.[6] Thus, she had it in her power to delay this beyond the time for filing the petition, if she continued as she had previously done to take the full time allowed by law, and thereby defeat the referendum without submitting it to the people.

On March 20th, the day before the effective date of such ordinance, the sponsors took the fifteen sections of the petition copies which they had circulated with 449 names signed and acknowledged thereon, to the County Clerk of Iron County, Utah, who checked the names against the official registration books of his county. He attached thereto a certificate

"that at the last general election 3122 persons of all parties voted for governor in Cedar City, and that the Petition for Referendum * * * contained 430 names of duly qualified and registered voters."

He also attached thereto another certificate

"that on the 20th day of March, 1953, I received * * * a Petition for Referendum * * *; that I have checked all names appearing on the sections and on each circulation sheet thereof; * * * that I have indicated such names appearing thereon as are registered voters in Cedar City, Utah, by placing *before* each of such names a check in the column where the name of such registered voter appears; * * * that all the names on said sheets not markd with a check either are not registered voters in Cedar City or are the names concerning which I have some question * * *."[7] (Italics ours.)

The checkmarks were actually placed after the names instead of before as stated in the certificate. These petitions and circulation lists with the attached certificates were on that day taken to the City Recorder who received the same and acknowledged receipt thereof.

---

[6]See Sections 20-11-1, 20-11-16 and 20-11-24, U.C.A. 1953.
[7]Sections 20-11-8 and 20-11-16, U.C.A. 1953.

Thereafter on March 23rd, she endorsed on these petitions and lists the word "Insufficient"[8] and attached thereto a certificate

"* * * that upon said circulation sheets, duly verified by the County Clerk were the names of O registered voters of Cedar City * * *."

This she justified by the fact that the checkmarks were after instead of before the signatures. Upon this being called to the attention of the County Clerk he made an amended certificate dated March 27, 1953, showing that the checkmarks were placed after the signatures. This was received by the Recorder who acknowledged receipt thereof on March 30, 1953. Thereafter a recount was had but the Recorder refused to change her endorsement from "Insufficient" to "Sufficient."

Plaintiffs contend the facts here shown require the submission of this ordinance to the voters for approval or rejection because, (1) it was the Recorder's duty to accept, record, certify, number and return to the sponsors for circulation, the printed petition copies presented to them on March 10, 1953; (2) that having failed to do her duty, where as here no one could be mislead or injured thereby, the law will presume that what should have been done was done, and thus make effective the Petition for Referendum the same as though these required acts had been done; and (3) that if so treated there were sufficient signers and the County Clerk's certificate was sufficient to require the submission of this ordinance to the voters.

The Recorder should have accepted these printed petition copies which sponsors furnished on March 10th. All of the detailed procedure provided for in the statute for obtaining these printed forms are mere formalities, for as long as the prescribed forms are supplied, who arranged for and the procedure followed in having them printed have no substantial effect on the result. The only

---

[8]See Section 20-11-16, U.C.A. 1953.

purpose of the prescribed procedure is to provide a means whereby the sponsors can obtain the properly printed forms and to save them every possible expense. That they do save expense is doubted for it is not apparent that a small printing job like this can be had for less money through a public official soliciting bids than can be obtained by a private individual through his own private arrangements, who in any event has to pay for it. But this procedure does have the potentiality of consuming twenty days of time which is always in this kind of case sorely needed by the sponsors and in this case an absolute necessity. In this case if the sponsors had followed the prescribed procedure it was within the power of the Recorder to defeat their purpose to obtain this referendum merely by taking all of the prescribed time in obtaining these printed forms allowed under the statute. She was allowed twenty days in which to obtain the forms and the petitions would have to be circulated and signed by the required number of voters, certified by the County Clerk and then filed with the City Recorder within fourteen days after the filing of the original petition. Certainly this long delay was not one of the purposes of the statute for we cannot ascribe to the legislature a purpose to make it next to impossible for the people to obtain the referendum which it provided. So the only purpose of this detailed procedure was for the benefit of the sponsors. It is everywhere recognized that the person for whose benefit a provision is made may waive it when it does not affect the right of others.[9] So in this case the sponsors had a right to waive these provisions and supply these printed forms through their own arrangements and at their own expense, which they had to pay in any event, as long as the forms furnished meet the statutory requirements it was the duty of the Recorder to accept them and proceed as required by law after the forms had been provided. These forms meet all the statutory requirements except in a small difference in the size

---

[9]See 56 Am.Jur. 105 to 112, Waiver Sections 4, 6, 7, and 10.

of the type and a certificate by the recorder that the title and number of the ordinance are stated correctly in the Petition which were not substantial defects. There is no claim that the title and number were not correctly stated in the Petition.

The State Constitution vests in the people the right to legislate directly. [10] The legislature has supplemented this provision by this statute and it is the duty of the courts to so construe the statute so as to make it operative where possible. We have held that the formal requirements of this statute are directory and not mandatory, and that substantial compliance with such provisions is sufficient.[11]

The failure of the Recorder to accept these printed forms as she should have done does not render the sponsor's Petition for Referendum ineffective. The forms of the petition copies, certificates, and circulation sheets and their binding in fifteen separate sections complied with the statute in every substantial detail. The Recorder's certificate was printed in those forms with her name printed in the place she should have signed them. She had refused to affix to them the corporate seal, to sign her name to the certificates, and to record the petitions as the law required her to do.[12] By her failure to do her duty, even though acting in good faith, she caused the sponsors to be faced with a serious problem. If they waited for her to obtain these printed petition copies, there was no reason to believe that they would be furnished in time to accomplish their purpose, so they had them printed themselves, but now she refused to sign the certificate which was attached to the copies to be circulated, although she had made such a certificate which she kept in her office. They could bring

[10]Constitution of Utah Art. 6, § 1.

[11]Chapter 11, Title 20, U.C.A. 1953 and especially Section 15 thereof. Also *Halgren* v. *Welling*, 91 Utah 16, 63 P.2d 550; *Allen* v. *Rasmussen*, 101 Utah 33, 117 P.2d 287.

[12]See Section 20-11-13, U.C.A. 1953.

a mandamus procedure to force her to execute these documents but such procedure would take time, and in order to be effective these petitions must have the required number of signatures and be filed with the Recorder within ten days, the time would in all probability expire before she could be forced to do her duty so the only safe course they could take was to do as they did, circulate the petitions without her signature or the corporate seal affixed to her certificate. So that is what they did. If it were not for the scarcity of time it would have no doubt been their duty to determine their rights in the courts before proceeding to circulate the petition, under the circumstances here presented their actions were justified.

Here there was no fraud or misrepresentation by the sponsors and nothing was done by them which was calculated to deceive or mislead any one. The sections of the printed forms which were circulated were in correct form except they lacked the signature of the Recorder and the corporate seal of the City and the certificate as to the title and number of the ordinance. These they did not purport to have but they were true copies of the petition on file with the Recorder and the certificate which she had attached to a copy thereof which was on file in her office. Under these circumstances, since no one has been adversely affected in reliance on her failure to act,[13] the petition was not invalidated by her failure to do her duty for the sponsors had done all they could do to make the petition effective and are not defeated by her failure to act.

[13]See *Parker* v. *California State Life Ins. Co.,* 85 Utah 595, 40 P.2d 175; and *Gressler* v. *New York Life Ins. Co.,* 108 Utah 182, 163 P.2d 324, 164 A.L.R. 1047, in which we quoted with approval from *Prudential Ins. Co. of America* v. *Union Trust Co.,* 56 Ind.App. 418, 105 N.E. 505, that "* * * if at the time of the filing of such application to revise, and the signing and delivery of the necessary papers accompanying it, there then existed no valid objection to the form or substance of such application * * * appellant * * * could do but one thing * * *." [82 Utah 595, 40 P.2d 178]

Although the original County Clerk's certificate was inaccurate in one respect, it did not invalidate the Petition. The Clerk's certificate stated that the check had been placed before the names of the duly registered voters, it was clear from the contents of the certificate and an examination of the names on the circulation sections what was intended. There were no checks placed before any of the names on the circulation sheets, but there were checks placed after the exact number of names as stated in the certificate and this is true as to each of the circulation sheets, as itemized in the certificate, and this alone would clearly indicate that the word "before" in the certificate was intended as "after." Further, the petition states that

"all the names on said sheets not marked with a check either are not registered voters * * * or are the names concerning which I have some question * * *."

This statement is not limited to names with a check placed before them but covers all names not marked with a check. So the meaning of this certificate is not in doubt even without the amended certificate. But if it were, we have no doubt that the certificate could properly be amended to conform with the facts and correct an obvious mistake at any time before the final decision of the Recorder on the recount of the names.

The extraordinary writ previously issued out of this court is made permanent.

Costs to the plaintiffs.

McDONOUGH, CROCKETT and HENRIOD, J.J., concur.

WOLFE, Chief Justice (concurring in the result).

I concur on the ground that in this case no one was prejudiced by the absence of the City Recorder's certificate

"that the law contained thereon [on the petition copy] is * * * the true and correct number and title of the law as proposed for referendum",

as required by Section 20-11-13, Utah Code Annotated 1953. The departure from the statute was substantial because the purpose of this requirement was to protect signers from being misled into signing a petition copy which did not pertain to the ordinance whose reference they intended to petition for. The matter of the style and size of the type used and the place on the petition copies where the registered voters were designated by the County Clerk are insubstantial requirements. The time table provided in Chapter 11 of Title 20 for the doing of certain acts preceding the placing of a referred ordinance on the ballot in a city election has been used several times with no trouble. But an ordinance may be passed at such time that to accommodate the time to the fixed prospective election day may require utmost cooperation of the County Clerk and City Recorder.

As Mr. Justice WADE suggests the matter of paramount importance is to give the voters in the town opportunity to vote on the ordinance. While I consider it also important to maintain the integrity of the various parts of the act so that each part may serve the purpose for which it was designed, in this case we may rest assured that no harm can be done by dispensing with the safeguard which the certificate was intended to provide, especially in view of the importance of the right to vote on the ordinance, the knowledge that no one was misled, and that the title of the ordinance which the petitioners were seeking to refer was correctly printed on each petition copy, along with the date of its enactment.

I also agree that the refusal of the City Recorder to certify as required by Section 20-11-12 that the petition copies presented to her by the sponsors, which they had had printed at their own expense, were true and correct copies of the original petition (not to be confused with the certificate required by Section 20-11-13) was not justified and hence it should not defeat the sponsors' attempt for referendum.