380 P.2d 9

**SUNSET LIFE INSURANCE COMPANY OF AMERICA, a corporation, Plaintiff-Appellant,**

v.

**Josephine C. CROSBY, Defendant-Respondent.**

**No. 9127.**

Supreme Court of Idaho.

March 21, 1963.

**408**

Richards, Haga & Eberle, Boise, for appellant.

Givens, O'Leary, Doane & Givens, Boise, for respondent.

TAYLOR, Justice.

Plaintiff (appellant) brought this action to obtain a judgment cancelling a life insurance policy issued by it April 8, 1955, insuring the life of Roy C. Crosby in the amount of $5000. The policy lapsed on September 8, 1956, for failure to pay the monthly premium due August 8, 1956. About September 9, 1956, the plaintiff mailed to insured a "Special Reinstatement Offer" containing the following proposal:

"The past-due payment will still be accepted, however, without interest charge or other requirement if, during the lifetime of the insured(s) and on or before the date shown on the reverse side, the request below is signed and forwarded to the Company with your remittance for the amount past due. \* \* \*

"I hereby certify that the Insured(s) under this policy is (are) now living and request that the accompanying payment be accepted.

_____
Date Signed      Signature of Owner of Policy"

In response to this offer, on September 17, 1956, the insured drew his personal bank check in favor of the plaintiff for the amount past due. This check was dated and signed by the insured, and was mailed to the company, together with the special reinstatement application form, on that day. However, the form was neither dated nor signed. Responding to this communication, under date of September 20, 1956, the insurer wrote to insured as follows:

"Thank you very much for your remittance of $11.65 which we received today [September 20, 1956].

"Unfortunately, the special reinstatement offer which you returned with your remittance was neither signed nor dated. In order to apply for reinstatement, therefore, we have to ask that the enclosed form be completed and returned.

"May we have this application by return mail, if possible, in order that there may be no delay in restoring the benefits that are yours if reinstatement can be approved? In the meantime, we are holding your remittance on deposit subject to your order. It would also be advisable to forward an additional remittance of $11.65 in order to continue your policy in force in the event of favorable action on your application."

The application for reinstatement referred to in the letter and enclosed therewith was executed by the insured September 22, 1956. Among other statements and representations made to the company by the insured in the second application for reinstatement was the following: "that I have taken no aerial flights as a pilot during the past two years" and recited that reinstatement thereunder should be "upon the express condition that if the foregoing statements be in any respect untrue, said Company shall, for a period of two years from the date of such reinstatement, be under no liability by reason of the attempted reinstatement of the policy," except for the return of interim premiums. The policy was reinstated October 1, 1956, and all subsequent premiums thereon were paid to

and including the period covering July 20, 1958, upon which date the insured died. Thereafter, the defendant beneficiary (respondent) gave plaintiff notice and proof of death and demanded payment of the face amount of the policy.

In its complaint plaintiff alleged that the representation made by the insured that he had taken no aerial flights as a pilot during the two years preceding application for reinstatement was false; that he had taken such flights; that the fact of such flights was concealed from the insurer and that in reinstating the policy the insurer relied upon the representation. In support of the complaint, one, Davidson, a vice-president and actuary of the insurer, testified that had the application for reinstatement revealed aerial flights as a pilot by the insured during the prior two years, the company would have investigated to determine the extent of hazard involved and, depending upon what was developed, would have (1) refused to reinstate the policy; (2) reinstated with a rider excluding protection while the insured was making such flights as a pilot; or (3) issued a policy covering the additional risk with an additional premium appropriate thereto.

By her answer and counterclaim defendant contends that by personally dating and signing his check for the past-due premium and forwarding same to the company with the special reinstatement offer, the insured had effectively complied with the offer; that he made the required showing that he was then living and requested that the payment represented by the check be accepted. Defendant also urged that the second form of application for reinstatement was signed by the insured, but that the blanks therein providing for date and other data having to do with insurability were not filled in; that the application was acted upon by the plaintiff and subsequent premiums accruing thereon were accepted by plaintiff; that plaintiff thereby waived any defect in the application and was estopped to deny its liability on the policy.

The trial court concluded that the dating and signing of his check for the past-due premium and the forwarding of the check with the unsigned form of certificate on the special reinstatement offer within the period fixed by the offer, was an effectual acceptance of the offer and resulted in a reinstatement of the policy, and that the failure of insured to date or sign the form had no material bearing upon the insurability of the insured, or upon the risk assumed by plaintiff. . .

Judgment was entered in favor of defendant upon her counterclaim for $5000 face amount of the policy, and $750 attorneys' fee allowed under the provisions of I.C. § 41–1403 (prior law S.L.1951, Ch. 289; Sec. 1. New section 41–1839). Plaintiff brought this appeal from the judgment.

The insured's right to reinstatement was not only a contract right provided by the terms of the policy, it was also a right granted by statute. The statute, I.C. § 41–1503 (prior law. New sections 41–1903 and 41–1923), required the policy to contain the provision:

"10. That the holder of a policy shall be entitled to have the policy reinstated at any time within three years from the date of any default in payment of premiums, * * * upon the production of evidence of insurability satisfactory to the company and the payment of all overdue premiums and any other indebtedness to the company upon said policy, with interest at a rate not exceeding six per cent per annum." I.C. § 41–1503.

The policy provision was substantially in the language of the statute, except that it granted a period of five years for reinstatement, instead of three. In this case the insurer waived interest and ultimately accepted the past-due premiums tendered. The fact that the insured was living was established by his signature upon the check accompanying the form, as effectually as his signature on the form would have done. That he was living was subsequently confirmed by the execution of the second application and the payment of premiums by the insured for nearly two years thereafter. The insured's signature is not questioned, and exemplars were available to insurer's officers and agents for verification purposes.

■ Within the limits of the terms and conditions of the original policy, upon application for reinstatement, the insurer may impose reasonable conditions as to insurability and require reasonably substantial compliance therewith. Equitable Life Assurance Soc. of United States v. Pettid, 40 Ariz. 239, 11 P.2d 833; 45 C.J.S. Insurance § 637c. (1); Annotation 164 A.L.R. 1057 and 1064 VI. However, in acting upon an application for reinstatement, the insurer may not act capriciously nor upon the basis of mere whim or fancy. As was said by Judge Folger in Miesell v. Globe Mutual Life Insurance Co., 76 N.Y. 115, 119, and quoted with approval by Judge Cardozo in Thompson v. Postal Life Insurance Co., 226 N.Y. 363, 123 N.E. 750, 751, "It could not be unsatisfied with the certificate; capriciously. That which the law will say a contracting party ought in reason to be satisfied with that the law will say he is satisfied with." In Kennedy v. Occidental Life Ins. Co., 18 Cal.2d 627, 117 P.2d 3, 7, the California Supreme Court said:

"The overwhelming weight of authority is to the effect that an agreement to reinstate an insurance policy upon 'satisfactory evidence' of insurability does not give the insurer the

power to act arbitrarily or capriciously, but that evidence which would be satisfactory to a reasonable insurer is all that is required."

See also: Culley v. New York Life, 27 Cal.2d 187, 163 P.2d 698; Gressler v. New York Life, 108 Utah 182, 163 P.2d 324, 164 A.L.R. 1047; Rouleau v. Continental Life Ins. Co., 45 Utah 234, 144 P. 1096; Schiel v. New York Life (C.A. 9th) 178 F.2d 729; Kahn v. Continental Casualty Co., 391 Ill. 445, 63 N.E.2d 468; Smith v. State Mutual Life Assur. (Pa.), 199 A. 358; Lane v. New York Life, 147 S.C. 333, 145 S.E. 196; 6 Couch, Cyclopedia of Insurance, § 1375, p. 4939.

In this case, so far as the special reinstatement offer was concerned, the only conditions to reinstatement imposed were a certification by the insured that he was alive, and tender of the past-due premium with a request that it be accepted. Other conditions which plaintiff might have imposed were waived. Equitable Life Assur. Soc. v. Pettid, 40 Ariz. 239, 11 P.2d 833; Travelers Pro. Ass'n v. Jones (C.C.A. 5th) 91 F.2d 377; 3 Appleman, Insurance Law and Practice, § 2051. These conditions were reasonably complied with and the policy must, therefore, be regarded as having been reinstated.

Judgment affirmed. Costs to respondent.

KNUDSON, C. J., and McQUADE, McFADDEN and SMITH, JJ., concur.